## Richmond.

## LINDSAY v. MURPHY.

### April 27, 1882.

1. HOMESTEAD—*Citizens.*—The privilege of homestead is accorded under the constitution of Virginia only to citizens of this State whilst they remain such.

2. IDEM—*Domicile.*—Change of domicile from this State, puts an end to the homestead privilege.

3. DOMICILE—*Change.*—Domicile is "residence with no present intention of removal." Mere absence, however long, effects no change of domicile.

4. IDEM.—*Burden of proof* of change of domicile is on him alleging it.

5. CASE AT BAR.—M long resided in Virginia, where he had a family and homestead. Embarrassed, he left his family here, took some personal property, and went to South Carolina and commenced business there. The family, except one daughter at school, followed him, because his creditors deprived them of the means of subsistence. The proof is, he went to South Carolina to raise money to pay his debts, without intention to give up his domicile in Virginia. On bill to subject house and lot duly set apart as M's homestead to the lien of a judgment, on the ground that the exemption had been forfeited by his removal—

HELD:

M not having ceased to be a citizen of this State, did not lose or abandon his homestead exemption.

Appeal from decree of chancery court of Richmond city in suit of John Lindsay against James Murphy to enforce a judgment lien on real estate duly set apart as latter's homestead, on the ground that the latter had lost or abandoned his homestead privilege in Virginia by removal therefrom. Decree for defendant. Plaintiff appealed. Opinion states the case.

*Johns & Bloomberg,* for appellant.

*Thomas G. Jackson,* for appellee.

BURKS, J., delivered the opinion of the court.

The appellant, Lindsay, brought his bill in the·chancery court of the city of Richmond to subject to the lien of his judgment real estate which his debtor, the defendant, Murphy, had duly set apart as his homestead under the constitution and laws of this State. Liability is claimed on the ground, that after the homestead was set apart, the exemption was lost or forfeited by Murphy's removal to the State of South Carolina.

We have no doubt that such removal, with a change of domicile, to that State, if established by the proofs, put an end to the homestead right. The terms "house-holder or head of a family" in the constitution and statute must be understood as referring to a citizen of the State of that description. The supposition is not to be indulged for a moment, that this right, privilege, or immunity was intended to be accorded to any others than citizens of this State and while they remain such. When they cease to be citizens, the immunity or exemption right as to property in the State ceases also. A change of domicile to another State involves an abandonment of the homestead rights and privileges in this State.

The remaining inquiry is, whether at the time the bill was filed Murphy had ceased to be a citizen of Virginia; in other words, whether he had permanently removed, had quit the State with the intention not to return, changed his domicile in this State to a domicile in South Carolina.

In *Pilson, Trustee, and others* v. *Bushong and others,* 29 Gratt. 229, 240, it was said, upon the authorities there cited, that

residence, with no present intention of removal, constitutes domicile. Mere change of place is not change of domicile. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. To constitute a new domicile, two things must concur—first, residence in the new locality; second, the intention to remain there. Until the new domicile is acquired, the old one remains; and wherever a change of domicile is alleged, the burden of proving it rests on the party alleging it. These principles are said to be axiomatic.

Testing the case by these principles, Murphy never changed his domicile in this State. "After a careful consideration of the pleadings and evidence on this point," said the learned chancellor who decided this case below, "I am of opinion that the defendant Murphy has not ceased to be a resident of this State, and has not lost or abandoned his homestead exemption." (See the chancellor's opinion, 4 Va. Law Journal, 119). In this conclusion we concur. The evidence shows that Murphy had resided in Virginia for thirty years. His home was here in Richmond. Embarrassed with debt and harassed by his creditors, he went to Charleston, South Carolina, and commenced business there, taking with him perhaps some of his personal property, but leaving his wife and children at home in Virginia. They (except one daughter at school) followed him because, after he left, his creditors, or the officers of the law, deprived them of the means of subsistence. His letters and the circumstances in proof tend to show that he went to Charleston and engaged in business there with the view of raising means to meet his debts, and with no intention of giving up his home in this State. He never sold, or attempted to sell, his real estate in Richmond, and evidently contemplated a return to the State. In fact, he did return. Though the burden of proving the change of

domicile was on the complainant, the weight of the proof was with the defendant.

The bill charges that the property set apart is of greater value than the homestead to which Murphy is entitled under the law. The chancellor, as shown by the decree, offered to direct an inquiry into this matter, if requested to do so by the complainant's counsel. The counsel declining, in open court, to make the request, the reference was not ordered.

We find no error in the decree, and it will be affirmed.

DECREE AFFIRMED.