**Staunton.**

82  455|
97  460|

82  455
e102 708|

82  455
|104  273

MARTIN'S ADM'R V. FIELDER AND ALS.

OCTOBER 7th, 1886.

1. APPELLATE COURT—*Jurisdiction—Administrator— Wards.*—Where amount decreed against administrator is within the jurisdictional limit, this court has jurisdiction of his appeal, though the amount decreed to each ward or distributee falls below that limit ; the aggregate being the amount in controversy. *Atkinson* v. *McCormick,* 76 Va. 791.
2. FIDUCIARIES—*Guardian de facto.*—Administrator purchasing the adult heirs' shares of their ancestor's land, and entering upon and receiving the rents and profits of the whole, will in equity be held accountable as guardian *de facto* of the infant heirs during their non-age, and as their agent afterwards, for their share of those rents and profits. *Peale* v. *Thurmond,* 77 Va. 753.
3. CHANCERY PRACTICE—*Circuity of action.*—In such case, decree for the infants against their *de facto* guardian's administrator for whole amount due them for rents and profits is not error, though, after guardian's decease, his real estate, including the infants', had been partitioned among his heirs, and one particular heir had held the infants' part, as his co-heirs would have had to contribute to his compensation, and such decree avoided circuity of action.

Appeal from decree of circuit court of Albemarle county, rendered May 28, 1885, in the cause of John Martin Fielder and others, plaintiffs, against Henry Loving, administrator of Thomas Martin, deceased, and the widow and heirs of the decedent, defendants.  The decree being that the administrator pay *de bonis decedentis* to John Martin Fielder $326.10, with

interest, &c., and to Elnora Snellson $321.69, with interest, &c., the former obtained an appeal and *supersedeas.*

Opinion states the case.

*C. L. Martin* and *Ro. Whitehead,* for the appellant.

*Caskie & Coleman,* and *Davis & Harrison,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This suit was instituted by John M. Fielder and his sister, Elnora Snellson, and her husband, against the administrator and heirs of Thomas Martin, deceased (Fielder and his sister claiming to have been wards of the said Thomas Martin), for the purpose of enforcing settlement in behalf of each of said wards, and of dividing, by sale or otherwise, a tract of land between said Martin's heirs and the said complainants.

The only appellant is the said administrator of Thomas Martin, deceased, against whom the circuit court decreed in favor of each of the said complainants (on account of Martin's indebtedness to them, respectively, as their guardian), for a sum less than $500, although these decrees together aggregate the sum of $639.79, as of January 1, 1885.

We are met, at the threshold, with the question of the jurisdiction of this court to review the decree of the circuit court in this case. The Constitution of Virginia, article VI., sec. 2, fixes five hundred dollars of value, exclusive of costs, as the minimum amount requisite to give this court jurisdiction to review a judgment or decree of a circuit court. The onus is upon the appellant or plaintiff in error to show, by the record, that the case is one of which the appellate court has jurisdiction. *Harman* v. *City of Lynchburg,* 33 Gratt. 40—citing 10 Peters R. 160.

The whole amount decreed against the administrator of Thomas Martin, deceased, who is the appellant, by the circuit court is $639.79, as of January 1st, 1885, but the sum decreed to each of the wards, complainants, is less than $500, and the jurisdiction of this court is denied, or challenged, upon the ground that the sum decreed to each of the complainants is severally and specifically decreed to him, or her; and that the specific amount thus decreed, is the sum in controversy between each ward and the appellant, and not the whole amount for which he has been held liable. But we think that the question of jurisdiction in this case is ruled by the case of *Atkinson* v. *McCormick*, 76 Va. (1 Hansbrough), 791; and by the case of *Shields* v. *Thomas*, (17 Howard, p. 3), in which last mentioned case the court say: "But we think the matter in controversy in the Kentucky court was the sum due to the representatives of the deceased, collectively, and not the particular sum to which each was entitled, &c. They all had a common and undivided interest in the claim, and it was perfectly immaterial to the appellant how it was to be shared among them." The aggregate amount which the appellant was decreed to pay was more than $500, and as to him this is the matter in controversy.

Upon the merits of this case, as disclosed by the record, we are of the opinion that the decree of the circuit court appealed from is right and ought to be affirmed.

In the year 1857, John Bailey Matthews died, in the county of Nelson, intestate, possessed of personal estate and the owner in fee of a tract of land of 155 acres, lying mostly in the county of Albemarle. Thomas Martin qualified as his administrator at the May court, 1857. The said Matthews left five adult heirs, and two infant grandchildren—the children of a deceased daughter. Martin bought the interests or shares of the five adult heirs in the land (it adjoining the tract on which he

resided), which they conveyed to him by deed dated September 13th, 1858, duly recorded in Albemarle county court clerk's office. Martin took possession of the whole tract, including the one-sixth interest of the two infant heirs, and held, used and enjoyed it till his death, in 1877, and it has been in the possession and enjoyment of his widow and children ever since and still is. Martin knew that the then infant Fielder children (these appellees) were entitled to one-sixth interest in the said land. They were orphans of tender years, without father or mother, and they lived remote from the land; and, from the nature of things, were ignorant of their interest in the land.

In February, 1859, Martin instituted a suit in the circuit court of Albemarle, and obtained a decree to sell the interest or share of the infant heirs in the land; and then neglected, if he did not, actually, interpose with his counsel (who was the commissioner of sale) to prevent its execution—he quietly holding and cultivating the whole tract as his own, as long as he lived, and transmitting it to the use and enjoyment of his family from his death up to the institution of this suit by these appellees in 1883, when they filed their bill for a partition of the land, and an account for rents and profits, and to enforce a settlement of Martin's transactions as administrator of their grandfather, in all the period since his qualification as such in 1857.

The circuit court, in its decree, treated Martin as the *quasi* guardian of the infant heirs, and decreed against him to pay them their estimated rents, with compound interest during their minority, and thereafter at legal interest to the close of the master's report in the cause.

" If a stranger enters into and occupies an infant's lands, he is compellable, at law, to render an account of rents and profits and will be chargeable as guardian or bailiff." Story's Equity Juris., sec. 511.

" If a man intrudes upon an infant, he shall receive the profits but as guardian; and the infant shall have an account against him in chancery as guardian. And if a man, during a person's infancy, receive the profits of an infant's estate, and continues to do so for several years after the infant comes of age, before any entry is made on him; yet he shall account for the profits throughout, and not during infancy alone." Toublanque's Equity, book 2, ch. 2, p. 235 to side.

In Schouler's Dom. Rel., sec. 326, speaking of *quasi* guardianship, it is said: "The general principle thus recognized is that any person who takes possession of an infant's property, takes it in trust for the infant. Hence courts of equity will always protect the helpless in such cases by holding the person who acts as guardian strictly accountable."

" Whoever enters upon the estate of an infant is considered, in equity, as entering in the character of guardian; and after the infant comes of age he may, by bill in chancery, recover the *mesne* profits." (Kent's Comm., side page 229, note B.) See case of *Van Epps* v. *Van Deusen*, 4 Paige Ch. 64, same case as reported in 25 Amer. Dec. 516.

The case of *Davis* v. *Harkness*, 1 Gilman (Illinois), 173, was a suit by the children and heirs of Harkness against the administrator of their step-father for moneys received by him, which belonged to the estate of their father, to which they were entitled. The court treated the step-father as guardian, and treated the debt against his estate as a fiduciary debt, and as a preferred debt in the administration of his estate. The court says: "Upon principle, too, as well as authority, should the infant be entitled to an account against him as guardian. It would be a strange rule of equity, indeed, if the infant were not as well protected against the violence of the wrong-doer, as he is against the peculations of an appointed guardian. If he receive the money of an infant, and use it, he is estopped

from denying that he received it as guardian, and so is his representative." In the case of *Garrett* v. *Carr*, 3 Leigh, 407, the court treated the executors as guardians *de facto* of the infant children of their testator, and held them to account as such. In the case of *Evans* v. *Pearce*, 15 Gratt. 513, a father, who was tenant in common with two of his children, was treated as guardian *de facto;* and was charged with conjectural rents and hires, and with compound interest. In the case of *Peale* v. *Thurman*, 77 Va. (2 Hansbrough), page 753, the father was charged as guardian *de facto* so long as he held the *corpus* of the infant's estate. Infants cannot protect themselves, and a court of equity will treat whoever receives what belongs to them as their guardian; in the language of Judge Robertson, in *Evans* v. *Pearce, supra:* "One who makes himself guardian *de facto* is certainly not entitled to be treated with more favor than if he had been legally appointed." See Kent's Comm., 2 vol., p. 231, note C.

It is objected that the decree appealed from was wholly against the administrator, when one or more of the heirs of Thomas Martin held the land after his death. The lands of Thomas Martin, including the land of these appellees, had been divided among his heirs. Martin having died intestate, his heirs are also his distributees, and are entitled to the personal estate in the hands of the administrator, as well as to the land, after paying debts, of which it does not appear there are any, other than what is due to these appellees.

If the court had decreed against the particular heir or heirs to whom the land of these appellees had been assigned in the partition, it would have been necessary, at the same time, to have decreed against the other heirs, in favor of the particular heir or heirs, for their contributive share or proportions of the loss occasioned by the paramount title of these appellants. "A mutual implied warranty" is one of the incidents to partition

among parceners. 2 Minor, 442. This would have been especially roundabout and inconvenient, as many of the heirs are infants. The children and heirs of Martin had just the same interest in the personalty as they had in the realty; the former had not been divided, the latter had. The money in the hands of the administrator belongs to Martin's estate; and the estate belongs to the heirs after payment of debts. The circuit court, by its decree, has only avoided circuity and multiplicity of suits.

Martin, himself, obtained a decree for the sale of the land, in 1860; and the heirs are not before this court as appellants or appellees, and have not undertaken to gainsay the decree for sale. See *Edmunds* v. *Scott*, 78 Va. (3 Hansbrough, 720).

There is no error in the decree complained of, and the same is affirmed.

DECREE AFFIRMED.