# 𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## BROWN v. BUTLER.

### April 9th, 1891.

1. STATUTE OF LIMITATIONS—*Judgment liens.*—In April, 1887, suit was brought to enforce the liens of two judgments, one dated February 23, 1866, the other dated November 2, 1866, both duly docketed, but execution had been issued on neither: *held*, right to enforce had ceased by limitation. (Code, §§ 3573, 3577 and 3578.)

2. IDEM—*Departure from State—Comparison of cases—Case at bar.*—In *Ficklin's Ex'or* v. *Carrington*, 31 Gratt., 219, it was laid down that debtor's removal from the State operates, *propria vigore*, to obstruct prosecution of plaintiff's right. In *Wilson* v. *Koontz*, 7 Cranch, 202, construing the same statute, it was held that removal of defendant must have *actually* obstructed plaintiff. In the case here plaintiff was not actually or constructively obstructed.

3. IDEM—*Sale of lien—Subject.*—Sale of real estate whereon the judgment is previously a lien is not, of itself, an obstruction of plaintiff.

4. DOMICILE—*Change of—Proof.*—Party must reside in new place with intent to remain there, in order to acquire a new domicile; and it is for the alleger of the change to prove it.

5. REGISTRY ACTS—*Parol purchasers.*—Where parol purchaser takes actual, visible and notorious possession and pays the entire purchase-money, a subsequent judgment against his vendor is no lien on the land. *Floyd* v. *Harding*, 28 Gratt., 401.

6. IDEM—*Auctioneer's memorandum.*—This writing, though sufficient to satisfy the statute of frauds, is not such contract in writing as the registry acts require to be recorded, and may be treated as a parol contract.

Appeal from decree of hustings court of city of Manchester, rendered June 22d, 1889, in a chancery suit of R. L. Brown,

&c., surviving partners, &c., against Jos. Butler & others. The decree being adverse to the complainants, they appealed. Opinion states the case.

*L. O. Wendenburg*, for the appellants.

*J. M. Gregory* and *Courtney & Patterson*, for the appellees.

LEWIS, P., delivered the opinion of the court.

This was a creditor's suit in the hustings court of Manchester, to subject certain lots of land situate within the present limits of that city, to the satisfaction of three judgments, recovered many years ago, against Joseph Butler, now deceased. The lots in question were sold, but not conveyed, by Butler prior to the rendition of the judgments, and the question is, whether, in the hands of his alienees, or those claiming under them, they are subject to the lien of the judgments. At the hearing, the court below dismissed the bill, whereupon the plaintiffs appealed.

The judgments in question are as follows, viz: (1) A judgment in favor of A. A. Jenks, for $23.70 and costs, obtained before a justice of the peace of Chesterfield county, on the 23d of February, 1866, which was duly docketed, but upon which no execution has ever issued. (2) A judgment in favor of Jenks, for $500, with interest and costs, obtained in the circuit court of Chesterfield county, on the 2d day of November, 1866, which, also, was duly docketed, but upon which no execution has ever issued; and, (3) A judgment in favor of Wm. B. Jones & Co., for $240.90, with interest and costs, obtained at the March term, 1867, of the same court. A few days thereafter, an execution of *fi. fa.* was issued on this judgment, returnable to the ensuing May rules, which was returned "no effects." The judgment was docketed on the 20th of March, 1867.

As to the first two judgments, we are of opinion that the defence of the statute of limitations is well founded. No execution has ever been issued on either of them, and the present suit was not commenced until April 30, 1887. The provision of the statute (Code, sec. 3573) is express that no suit shall be brought to enforce the lien of a judgment upon which the right to issue an execution, or bring a *scire facias*, or an action, is barred by sections 3577 and 3578; and by section 3577 it is provided that "on a judgment, execution may be issued within a year, and a *scire facias*, or an action, may be brought within ten years after the date of the judgment; and where execution issues within the year, other executions may be issued, or a *scire facias*, or an action, may be brought within ten years from the return day of an execution on which there is no return by an officer, or within twenty years from the return day of an execution on which there is no such return," with certain exceptions not material to the present case.

The appellants, however, contend that the limitation of the statute is repelled by the judgment debtor's departure without the State, and absence therefrom, and they rely upon the case of *Ficklin's Ex'or* v. *Carrington*, 31 Gratt., 219 On the other hand, the appellees contend that that decision had no application to the present case, first, because the exception contained in the statute, which was construed in that case, applies only to the person who obstructs the prosecution of any such right as is mentioned in the statute, and, secondly, because there was no such departure from the State by the judgment debtor in the present case, as is contemplated by the statute.

The statute provides that where any such right as is mentioned therein "shall accrue against a person who had before resided in this State, if such person shall, by departing without the same, or by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right, the time that such obstruction may have continued

shall not be computed as any part of the time within which the said right might·or ought to have been prosecuted. But this section shall not avail against any other person than him so obstructing, notwithstanding another might have been jointly sued with him, if there had been such obstruction." Code, sec. 2933.

With respect to the first branch of the appellee's contention, above stated, we are of opinion that so long as a judgment is in existence as against the judgment debtor, the lien thereof continues, and may be enforced in equity, although the real estate sought to be subjected is in the hands of a purchaser who has in no way obstructed the prosecution of the plaintiff's right, provided, of course, the lien is in other respects enforceable against such real estate.

In the present case, however, we agree with the appellees that there has been no such obstruction, and, consequently, that the case is not within the exception contained in the statute, above quoted. When the judgments were obtained, the judgment debtor was, confessedly, a resident of this State, having a family and a home in the city of Manchester. It appears that he was by trade a carpenter and bridge-builder, and that several years after the rendition of the judgments he left Manchester, "going first to one place and then another," working at his trade. His daughter, Mrs. Burton, who was examined as a witness in the cause, testifies that he travelled about a good deal. "I received letters from him," she says, "from Tennessee, Cincinnati, St. Louis, Norfolk and other places."

His wife and family, however, continued to reside in Manchester, to which place he occasionally returned. And the preponderance of the evidence is to the effect that he regarded that city as his home until his death, which occurred after the institution of the present suit. Mrs. Burton testifies that only three months before her deposition was taken, he wrote "he was coming *home*"—*i. e.*, to Manchester—and she added :

"We were expecting him home Xmas, had he not died." He died in Baltimore, where for a number of years he spent the most of his time.

That he and his wife lived unhappily together is not disputed, nor is it disputed that he left Manchester much indebted; but the evidence does not show that he ever intended to totally abandon his family, or to become a resident of another State. "Departing without the State," within the meaning of the statute, is a removal from the State with the intention of changing one's residence. It is different from absconding or concealing oneself, and the burden of proving such removal, in the present case, was on the plaintiffs. *Pilson* v. *Bushong*, 29 Gratt., 229; *Lindsay* v. *Murphy*, 76 Va., 428.

The case of *Ficklin's Ex'or* v. *Carrington* is not in conflict with these views, for there it was admitted that the defendant, after the cause of action accrued, left the State, and became a resident of another State. The court, however, in deciding the case, laid down the broad doctrine that such a removal operates, *proprio vigore*, an obstruction, within the meaning of the statute, to the prosecution of the plaintiff's right, during the period of the debtor's absence.

It is somewhat remarkable that no allusion was made in the opinion to *Wilson* v. *Koontz*, 7 Cranch, 202. In that case a substantially similar statute of this State was the subject of construction, and it was there held by the supreme court, speaking by Chief Justice Marshall, that it was essential, in order to bring the case within the exception contained in the statute, that the plaintiff should have been *actually* obstructed by the removal of the defendant. And in 1 Robinson's (old) Practice, p. 109, the author expresses the same view, saying that the mere circumstance of the defendant's removal is not sufficient where there is no evidence to show that the plaintiff intended to bring his action sooner than he did, or that he was, in fact, delayed by the defendant's removal.

The same view is also expressed by the learned author of

the Institutes, in construing the statute as it now is, and as it was when *Ficklin's Ex'or* v. *Carrington* was decided. "It must appear," he says, "that the complainant was actually defeated or obstructed in bringing his action, not merely that he might have been so;" citing *Wilson* v. *Koontz, supra;* 4 Min. Insts., 514.

Without stopping, however, to inquire whether these decisions are irreconcilable, and if so, which is the correct one, it is enough for the purposes of the present case to say that upon the facts, already adverted to, we are of opinion that the appellants are not shown to have been obstructed in the prosecution of their rights, either actually or constructively. The bar of the statute was, therefore, complete when the suit was commenced.

As to the order made by the circuit court of Chesterfield county, on the 15th of November, 1887, after the commencement of the suit, purporting to revive the second judgment, above mentioned, on a *scire facias* sued out against Butler, the judgment debtor, it is clear that that order cannot affect the rights of the purchasers, whose property is sought to be subjected in this suit. Not only were they not parties to the proceeding, but the judgment had been "annihilated" by time and the operation of the statute before the *scire facias* was sued out. And the principle has not only been affirmed by this court, but is now settled by statute, that the lien of a judgment ceases with the life of a judgment. *Hutcheson* v. *Grubbs*, 80 Va., 251; Code, sec. 3573; *Ayre's Adm'r* v. *Burke*, 82 Va., 338.

The principal defence set up against the third judgment (which is not barred by the statute) is that the lots in question were purchased under parol contracts; that the purchasers at once took actual, visible, and notorious possession, and that the purchase-money was fully paid before judgment, actual or constructive. In other words, the contention is that the case

is within the principle decided in *Floyd* v. *Harding*, 28 Gratt., 401; and we are of opinion that this position is well taken.

The most of the lots in question were sold at public auction, through Grubbs & Williams, auctioneers, on the 29th of December, 1865. The deeds, however, were not delivered until after the docketing of the judgments. There was no other contemporaneous writing evidencing the sales than the auctioneers' memorandum, which was as follows, to-wit:

December 29th.—Auction sale of real estate of Jos. Butler—Terms, one-third cash; balance at six and twelve months, with interest added.

"Lots on Manchester and Falling Creek Turnpike:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| "Lot | 30 feet front at $2 | 10—Ed. Chenault, | - | $ 63 00 |
| " | 30 " " " | 1 90—Wm. Heider, | - | - | 57 00 |
| " | 90 " . " " | 1 60—J. C. Laughton, | - | 144 00 |
| " | 30 " " " | 1 75—Stephen Ryan, | - | 52 50 |
| " | 60 " " with framed house—W. T. Brooks, | 306 00 |
| " | 30 " " at $1.90—Chas. Severance, | - | - | 57 00" |

This writing, although a sufficient "memorandum" to satisfy the statute of frauds, is not such a contract in writing as by the registry acts is required to be recorded. And as to the lot on what is now Decatur street, sold privately to S. A. Moles, on the 1st day of October, 1866, we are of opinion that that transaction, also, is within the protection of the principle decided in *Floyd* v. *Harding*. The transaction was treated by the commissioner as a parol contract, and we think he was warranted in so treating it.

Upon the other points made by the defendants, namely, that the purchasers took immediate and notorious possession of the lots purchased by them, respectively, and that the purchase-money was fully paid before notice of the judgment, a great deal of testimony was taken before the commissioner, which

is copied into the record.   We do not deem it necessary to review it.   It is enough to say we have examined it carefully, and are satisfied with the conclusion reached by the learned judge of the hustings court.

The decree dismissing the bill is therefore affirmed.

.Decree affirmed.