LAMB v. LAMB.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment reversed and a new trial granted, costs to abide the event.

EDITH M. LAMB, BLANCHE A. LAMB and BEATRICE L. LAMB, Infants, by their Guardian ad litem, JAMES WHITE, Appellants, v. JESSIE M. LAMB, Respondent.

*Infants' real estate — recovery of rent — agreement to pay rent — use of infants' house by their mother — agreement with the general guardian for occupation, rent free, in part payment of the infants' board.*

An action to compel an accounting for the mesne profits or rents of an infant's real estate, in the absence of an express or implied contract to pay rent, can be maintained only against a wrongful occupant or intruder

When, in an action to recover rent for an infant's real estate, it appears that the defendant was in possession under the infant's general guardian and by his permission, and hence was not an intruder or wrongfully in possession, the action cannot be maintained without proof of an express or implied agreement by the defendant to pay rent

While the possession of real property with the consent of the owner is ordinarily sufficient to sustain an action upon an implied agreement for use and occupation, such an agreement may not be implied when the circumstances attending the use and occupation show clearly that there was no expectation on the part of either of the parties that rent would be paid.

In an action brought in the name of infant owners by their guardian, to recover from the infants' mother for the use and occupation of the family homestead which the mother had continued to occupy, with the infants, after the death of the infants' father, by permission of their general guardian, the evi-

dence tended to show that it was not the intention of the parties that the defendant should pay for the occupation of the house, but that it was understood between her and the general guardian that she should have the use of the house for herself and the infants, rent free, in part payment for the board and clothing of the infants

*Held*, that the general guardian had a right to allow the defendant to occupy the premises free of rent, if the arrangement was in fact a reasonable and fair one

APPEAL by the plaintiffs, Edith M. Lamb, Blanche A. Lamb and Beatrice L. Lamb, infants, by their guardian *ad litem*, James White, from a judgment of the Supreme Court, entered in the office of the clerk of Albany county on the 8th day of February, 1893, upon a verdict in favor of the defendant rendered at the Albany Circuit, and from an order denying the plaintiffs' motion for a new trial made upon the minutes.

The complaint in the action, which was commenced in February, 1891, was as follows:

"The above-named plaintiffs, by their guardian aforesaid, complaining against the above-named defendant, aver:

"I. That said plaintiffs now are and ever since January 18th, 1885, have been the joint owners in fee of certain premises situated on the northwest corner of Mohawk and Howard streets, in the city of Cohoes, N. Y., consisting of a lot about one hundred feet deep by fifty feet wide, on which is a large brick dwelling house, suitable for residence purposes. That ever since the last day of February, in the year 1885, the same has been used and occupied as such by said defendant. That the use and occupation of said premises is reasonably worth the sum of six hundred dollars per year. That no part of the same has been paid by said defendant, although requested so to do by the general guardian of the property of said plaintiffs.

"II. That each of said plaintiffs is under fourteen years of age.

"III. That on the 16th day of February, 1891, said James White was by an order, duly made by Hon. J. H. Clute, county judge of Albany county, appointed guardian *ad litem* of said plaintiffs herein.

"Wherefore these plaintiffs demand judgment herein, that they recover of said defendant the sum of thirty-five hundred and seventy-five dollars, with interest on the sum of each $600 from the

·end of each year of such occupancy, together with costs of this action."

The answer consisted of a denial of liability or indebtedness for such use and occupation, and an averment that defendant, as the mother ·of plaintiffs, occupied said premises with them as their common home, with the consent of their guardian and under an agreement with him, whereby she was not to pay any rent, but was to provide a home for them and pay one-third of the taxes and one-third of the repairs, etc., and that, considering the amount of the estate of such infants, the occupation of the premises as their residence was suitable and proper and not extravagant.

James White is the guardian *ad litem* and general guardian of the infant plaintiffs, who were, at the time of the trial, all under fourteen years of age. James Lamb, the husband of the defendant and father of the infants, died intestate January 18, 1885, leaving a ·considerable estate from which each of the children derived an annual income of $1,200, and among other real property a house and lot occupied by him in his lifetime as a residence, the rental value of which is about $600 per year. The defendant continued to live there with the children after the death of her husband, and remained in such occupation using it as a residence ever since.

It was an undisputed fact on the trial that an agreement was made between the guardian and the mother of the infants in November, 1886, whereby the mother was to receive $1,000 a year for *boarding and clothing* the infants from the time of the decease of the father to the time of the agreement, which was then paid, and also thenceforward, which was paid accordingly every six months thereafter, but the defendant testified that under the agreement she was to remain in the old residence and have the right to use and occupy it as a part of the consideration for boarding and clothing the children. This was disputed and denied by the guardian.

*J. F. Crawford* and *E. Countryman*, for the appellants.

*Henry A. Strong* and *Matthew Hale*, for the respondent.

PUTNAM, J. :

The appellant urges that the court below erred in holding that the ·action did not lie to recover the value of the use and occupation of ·the premises described in the complaint, in the absence of an agree-

ment, express or implied, between defendant and the guardian, to pay rent therefor; that an intruder upon or a mere occupant of the lands of an infant is liable to account in an action for rents and profits.

It is undoubtedly true that one who occupies the land of an infant wrongfully or without right, an intruder thereon, can be made to account in a proper action.

Is this one of those cases, under the pleadings, or the facts appearing on the trial, where the defendant could be made to account, in the absence of an express or implied agreement to pay rent?

The complaint certainly is not drawn to recover a claim for mesne profits or rents accrued to plaintiff by reason of a *wrongful* occupancy of the lands belonging to plaintiffs.

It is held that a mere intruder on the lands of an infant is considered in equity as entering in the character of guardian, and after the infant comes of age he may, by a bill in chancery, recover the mesne profits. (*Martin's Admr.* v. *Fielder et al.*, 82 Va. 455–459; *Van Epps* v. *Van Deusen*, 4 Paige, 64–71; *Drury* v. *Conner*, 1 Har. & Gill. 220.)

It does not appear that the complaint is drawn as a bill in equity to recover the mesne profits under the above cases. It does not state facts to justify such a recovery. It does not allege how defendant entered or occupied said premises, or that she occupied them wrongfully or as an intruder, or without the consent of plaintiff's general guardian. It does not ask an accounting. The complaint is evidently framed to recover rent for the use and occupation of the premises described in the complaint due to plaintiffs under an express or implied contract. We are, therefore, inclined to agree with the position taken by respondent that under the pleadings the plaintiffs to recover were compelled to show an express or implied contract with the defendant to pay rent.

But, assuming the complaint is sufficient to justify a recovery in the absence of such contract, we are of the opinion that under the facts established on the trial the court below made the proper disposition of the case.

The authorities cited by appellants to sustain their position above referred to are not applicable to such a case as this. In *Boylan* v.

*Deinzer* (45 N. J. Eq. 485) the defendant *wrongfully* retained possession of lands of plaintiff after her term had expired. The case merely affirms an old doctrine stated in Story's Equity Jurisprudence, 571, viz.: "Thus, for instance, if a man intrudes upon an infant's lands and takes the profits, he is compellable to account for them, and will be treated as a guardian or trustee of the infant. And this is but following out the rule of law in like case, for so greatly does the law favor infants, that if a stranger enters into and occupies an infant's lands, he is compellable at law to render an account of the rents and profits, and will be chargeable as guardian or bailiff."

In *Hicks* v. *Sallitt* (3 De G., M. &. G. 782) it was held that a party found wrongfully in the possession of property is to account for the rents and profits. All the other authorities cited by plaintiffs are to the same effect, holding that a mere intruder or one wrongfully or without right in possession of the premises of an infant in a proper action may be made to account for the rents and profits.

In this case plaintiffs on the trial failed to produce any evidence showing that defendant was an intruder or wrongfully in possession of the premises in question. The testimony shows that she was rightfully occupying the same. It will not be questioned but what James White, as general guardian of plaintiffs, had power to control their real estate. He could bring ejectment or trespass, could lease, manage and protect the same. (See 2 Kent's Comm. 228; *Torry* v. *Black*, 58 N. Y. 185.) The evidence fairly shows that defendant remained in possession of plaintiff's real estate by consent of, and under the general guardian. There is a dispute as to the terms of her occupancy, she claiming that he agreed she might have the use of the house and $1,000 a year for the board and clothing of the children, and he testifying to facts from which a conditional agreement to pay rent might be inferred. But by the testimony of both, there being no other evidence in the case on the subject, it appears that after the death of her husband defendant continued in the occupation of the premises with the consent of the guardian. She testified, as already stated, that she was to remain in possession of the house and receive $1,000 a year for the board and clothing of plaintiffs. He testified in regard to her occupancy of the house as

follows: " I told her that Mr. Crawford had told me it was neces-
sary for me to make up an annual report of the business I had done
for the children as guardian. She said, 'I suppose we will know
how much the rent is going to be now.' I said I suppose so. I
made up my report, and expected to go down with it, and Mr.
Crawford came in and said it was not necessary for me to go down;
that he would go down. * * * Q. Did you afterwards have a
conversation with Mrs. Lamb? A. Yes, sir. * * * Q. What
was said between you? A. I said Mr. Crawford has returned; they
have said nothing in regard to the rent; that is, the surrogate had
said nothing. * * * Q. What did you say to her then about
rent for that residence? A. I said he had made no remarks about
the rent of the residence, and she said, 'Probably he don't intend to
charge me anything.' Q. Speaking of the surrogate? A. Yes, sir;
I said it looks so. Q. Before that time had remarks passed between
you and Mrs. Lamb upon the subject of the surrogate fixing the
rent? A. Yes, sir. The witness: We had talked about it. * * *
Q. From what had occurred between you what did she say about her
impression, and what did you say about giving your impression?
A. That he had the stating of the amount of the rent. Q. That is,
the surrogate had? A. Yes, sir. Q. Or whether rent should be
paid at all? A. Yes, sir."

Plaintiff's testimony, therefore, shows that defendant was in occu-
pation under an agreement to pay rent if the surrogate required it,
otherwise not. Hence, by the testimony of both parties, defendant
was rightly in possession of said premises by consent of the guardian.

Hence, the authorities referred to by appellant, and on which he
relies, are not applicable. The defendant being in possession of the
premises in question, under an agreement with the guardian (and he
was, in fact, the landlord) that she should have the rent of the said
premises, and $1,000 for boarding and clothing said children, or
under the circumstances and agreement as detailed by the plaintiff
in his testimony, in either case, was so in occupation under the
guardian by his permission, and hence was not an intruder or wrong-
fully on the premises. It follows, we think, that respondent, if lia-
ble at all to pay rent, was so liable under an express or implied
contract to make such payment. She could not be made responsible
as a wrongdoer or intruder or one unlawfully in possession. The

trial judge, therefore, properly charged the jury that unless there was an express or implied agreement to pay rent the plaintiff could not recover.

As to whether the evidence disclosed such an agreement on the part of the defendant was a question of fact which was properly and fairly submitted to the jury by the trial court and we cannot say that the verdict of the jury was unsupported by the evidence. It is held that while the possession of real property with the consent of the owner is ordinarily sufficient to sustain an action upon an implied agreement for use and occupation, such an agreement may not be implied where the circumstances attending the use and occupation show clearly that there was no expectation to pay rent by either of the parties. (*Collyer* v. *Collyer*, 113 N. Y. 442.)

Even if we should not take into consideration the testimony of defendant in the case, we think the other evidence was sufficient to support the conclusion reached by the jury. The petition to the surrogate signed by defendant stating that no rent was derived from the premises in question; the testimony of White before the surrogate that he thought as long as defendant and her children occupied the house she should live there rent free; his annual reports to the surrogate in which he made no mention of rent; his semi-annual payment to defendant without deducting anything for the use of said premises; the fact that she remained in the occupation five years without plaintiffs' making any claim on account of the occupancy; all the facts proved on the trial tend to show that it was not the intention of the parties that defendant should pay for the occupation of said house, but that she should have the use of the homestead for herself and the plaintiffs in addition to the payment of $1,000.

It is suggested that if plaintiffs permitted defendant to occupy the premises, she had no right to use them, and plaintiffs had no right to allow her to do so without the payment of rent, within the principles established in *Torry* v. *Black* (*supra*) and kindred cases. But the guardian had a right to allow defendant to occupy the premises free of rent if the arrangement he in fact made was a reasonable and fair one. He could allow her to remain therein in part payment for the board and clothing of his wards. The guardian and defendant could not make a contract the effect of which was to

defraud the plaintiffs. But such a fraudulent arrangement was not alleged in the complaint or proved on the trial. It was not shown that the use of said premises and the payment of $1,000 was not a proper and just arrangement. The defendant was entitled to the use of one-third of the premises, and she, therefore, received the use of two-thirds thereof and $1,000 for taking care of the three plaintiffs, the latter occupying the house with her. It certainly does not appear from the evidence that a contract which allowed her the use of the house was improper. If the view taken by the plaintiffs is correct, respondent furnished a house worth $600 per annum for the purpose of keeping the three infants, receiving $1,000 per year for their board and clothing. Such an arrangement might be deemed unfair, it not being probable that she would have required such a house except for the purpose of boarding the plaintiffs.

We have examined carefully the various exceptions taken on the trial. We do not think any of them require discussion or a reversal of the judgment.

Judgment affirmed, with costs.

Mayham, P. J., concurred in result; Herrick, J., not acting.

Judgment affirmed, with costs.