## Staunton.

CHEATHAM'S ADM'R & ANOTHER V. AISTROP'S ADM'R & OTHERS.

SEPTEMBER 21, 1899.

1. APPEAL AND ERROR—*Amount in Controversy—Joint Interest in a Judgment.*—Where a judgment for $500 or more is assigned to two parties, to be divided between them, the sum in controversy in a suit to enforce the judgment is the amount of the judgment, though the interest of one of the parties may be less than $500. Neither of the assignees has a claim founded on an independent contract which he has the right to enforce without regard to the other. In such case this court has jurisdiction of an appeal from a decree affecting the judgment.

2. STATUTE OF LIMITATIONS—*Removal from the State.*—The removal of a judgment debtor from the State is of itself an obstruction to a suit to enforce the judgment, and the statute of limitations does not run against the judgment while the debtor remains out of the State. *Ficklin* v. *Carrington*, 31 Gratt. 219, approved.

3. STATUTE OF LIMITATIONS—*Presumption of Payment—Laches.*—The presumption of payment of a debt does not, as a matter of law, arise within the statutory period of limitation, though the lapse of time may be relied on, in connection with other circumstances, as evidence of payment, but the evidence in the case in judgment does not show that the debt has been paid, nor raise a presumption of its payment.

Appeal from a decree of the Circuit Court of Nelson county, pronounced September 9, 1898, in a suit in chancery wherein the appellants and another were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

VOL. XCVII—58

*Caskie & Coleman*, for the appellants.

*S. B. Whitehead* and *B. T. Gordon*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

William Cheatham, suing for the benefit of Sarah A. Cheatham and Alexander Fitzpatrick, at the September term, 1854, of the Circuit Court of Nelson county, recovered a judgment against R. I. Morgan and E. P. Aistrop, then late partners trading under the firm name of Morgan & Aistrop, for the sum of $406.02, with interest from March 2, 1854, and costs of protest of the note sued on, and costs of the suit, subject to a credit of $29.45, as of August 7, 1854.

Two executions were issued on the judgment, the last one returned to June Rules, 1856, of Nelson Circuit Court, the return on both being " no effects."

Morgan & Aistrop were at that time totally insolvent, and Morgan died a short time afterwards in Nelson county, leaving no estate whatever.

Between the date of the judgment and the beginning of the civil war, in 1861, Aistrop removed from Nelson county to the city of Lynchburg, where he resided till 1863, when he was drafted into the Confederate army, which army he deserted, going to the city of Washington, where he resided until the spring of 1896, at which time he returned to Nelson county, and remained until his death in the spring of 1897. After leaving Nelson county, and while he resided in Lynchburg, Aistrop held a position as clerk or salesman in a commercial establishment, and whatever money he may have thus made was deposited in bank in his name as administrator of one L. D. Aistrop, deceased. He was regarded as a spendthrift, and had but little property which could have been reached by his creditors in the State of Virginia at any time prior to 1892.

On the 30th of May, 1892, Aistrop purchased a tract of land

in the county of Nelson, which, in order to prevent its being subjected to the judgments against him, he caused to be conveyed to one R. L. Galt, but, having been assured that the judgments against him were "outlawed," to use his own expression, he had Galt convey this land to him in September, 1892, and placed considerable personal property thereon.

Sarah A. Cheatham having died, William Cheatham qualified as her administrator, and the estate of A. Fitzpatrick having been committed to M. K. Estes, sheriff of Nelson county, for administration, William Cheatham, as administrator of Sarah A. Cheatham, deceased, and M. K. Estes, as administrator of A. Fitzpatrick, deceased, filed their bill to the November rules, 1897, of Nelson Circuit Court, against the devisee and heirs at law of E. P. Aistrop to subject the said tract of land owned by him in Nelson county to the payment of the aforesaid judgment.

John P. Jennings, to whom E. P. Aistrop devised the tract of land sought to be subjected to the payment of the judgment, and E. P. Aistrop's administrator and heirs, set up as their defence to the bill the statute of limitations, and the presumption of payment arising from the lapse of time and the laches of complainants.

Upon the hearing of the cause on the bill, the answers thereto, and the depositions of witnesses, the Circuit Court of Nelson county, at its September term, 1898, dismissed it, and from that decree the complainants obtained an appeal to this court.

A motion is made to dismiss the appeal as to A. Fitzpatrick's administrator, on the ground that his interest in the judgment sued on does not amount to $500.

The sum in controversy is the amount due on the judgment, and the judgment was obtained on a note given by Morgan & Aistrop to William Cheatham, who assigned it to Sarah A. Cheatham as to $300 of its amount, and to A. Fitzpatrick as to the residue. Neither of the assignees had a claim founded upon an independent contract, which each had the right to enforce

without regard to the other, and although the money, when collected, is to be divided between the complainants in this suit in unequal proportions, the sum in controversy is over $500. Appellants have a joint interest in the recovery, and it is immaterial to appellees how it is to be shared among appellants. Therefore, this court has jurisdiction on their appeal. *White* v. *Building, &c. Co.*, 96 Va. 270; *Martin* v. *Fielder*, 82 Va. 455-57; and *Shields* v. *Thomas*, 17 How. 3.

The next question presented is, are appellants barred in the collection of their judgment by the statute of limitations?

Certainly, if the time that E. P. Aistrop was a non-resident of Virgina is to be included in the computation of the time that elapsed from the date of the return of the last execution issued upon the judgment, to the institution of this suit, excluding the period from April 17, 1861, to March 29, 1871, the appellants cannot enforce their judgment. But this court, in *Ficklin* v. *Carrington*, 31 Gratt. 219, held: "Where a debtor who resides in the State removes, after contracting the debt, to another State, the removal is itself an obstruction to the prosecution of a suit by the creditor to recover the debt, and the statute of limitations will not run against the debt while the debtor remains out of the State."

It is somewhat insisted upon by appellees that the decision in *Ficklin* v. *Carrington*, *supra*, has been overruled by this court in *Brown* v. *Butler*, 87 Va. 621, and it is so stated by Mr. Barton in a review of the two cases (2 Barton's L. Pr., note, p. 793), but we are unable to take that view of the decision in *Brown* v. *Butler*. In that case Lewis, P., after stating that the decision in *Ficklin* v. *Carrington* laid down the broad doctrine that the removal by a debtor out of the State, operates *proprio vigore* an obstruction, within the meaning of the statute, to the prosecution of the creditor's right to sue, during the period of the debtor's absence, only says that it is somewhat remarkable that no allusion was made in the opinion to *Wilson* v. *Koontz*, 7

Cranch 202, in which case a substantially similar statute to section 2933 of the present Code was the subject of construction, and it was there held that it was essential, in order to bring the case within the exception contained in the statute, that the plaintiff should have been *actually* obstructed by the removal of the defendant. But the opinion in *Brown* v. *Butler* does not overrule or disapprove the decision in *Ficklin* v. *Carrington*. It was not necessary to a decision of the question involved in *Brown* v. *Butler*, hence the opinion expressly says, " Without stopping, however, to inquire whether those decisions (*Wilson* v. *Koontz*, and *Ficklin* v. *Carrington*) are irreconcilable, and if so, which is the correct one, it is enough for the purposes of the present case to say that upon the facts already adverted to, we are of opinion that the appellants are not shown to have been obstructed in the prosecution of their rights, either actually or constructively." Moreover, the statute construed by the court in *Ficklin* v. *Carrington*, more than twenty years ago, has since been incorporated into the new Code, without change (Sec. 2933), and although the Legislature, at its last session (Acts 1897-'8, p. 441), amended that section in another particular, it did not amend it so far as it was involved and construed in *Ficklin* v. *Carrington*. We are therefore of opinion that the decision in that case controls the decision of the question under consideration here, and that the defence of the statute of limitations cannot avail appellees.

The remaining question is whether or not the presumption of payment arises from the lapse of time and the laches of appellants in the assertion of their judgment against E. P. Aistrop, now deceased.

As we have seen, the judgment was not barred by the statute of limitations when this suit was instituted, the period of Aistrop's absence from the State being excluded from the computation of the time the judgment had been running, and it is conceded by appellees that the presumption of the payment of

a debt does not, as a matter of law, arise within the statutory period of limitations, though the lapse of time may be relied on, in connection with other circumstances, as evidence of payment.

What, then, are the circumstances on which, together with the lapse of time, appellees rely to justify the presumption that the judgment in question has been paid? They are, first, the fact that Aistrop owned an undivided interest in a house and lot occupied by his mother in the town of Lovingston till about 1868, where appellant, William Cheatham, and his mother, Sarah A. Cheatham, lived until their removal to Lynchburg about 1875, and no effort was made by them to subject the interest of Aistrop in this property or the rents received therefrom to the payment of the judgment now asserted; second, that Aistrop was employed in the city of Lynchburg up to the time he was drafted into the Confederate army, and probably received a salary of from $1,200 to $1,500 *per annum*, and perhaps owned a negro man—a body servant—and spent money freely, not only for himself, but for his friends; third, it was currently reported that he, after his removal to Washington, had amassed a handsome fortune, and had bought and in 1892 had title to a farm in Nelson county, putting upon it stock, farming implements, furniture, &c.; and, fourth, the failure of Cheatham or his mother, who were poor and needy, to take steps to collect their judgment till after Aistrop's death.

On the other hand, the proof in the record shows, in addition to what has already been stated, that the interest of Aistrop in the house and lot at Lovingston, if it had been sold, subject to his mother's dower interest therein, would have brought but little, if anything, over the costs of the chancery suit to subject it, and, besides, there was one other judgment at least against Aistrop docketed in Nelson county that had priority over the judgment of Cheatham for `&c.

It further appears from the deposition of William Cheatham that when Aistrop was in Lynchburg, he (Cheatham) made an

inquiry as to whether Aistrop had anything out of which a debt against him could be made, and was told by the president of the bank where it was supposed Aistrop had his money, after the books of the bank had been examined, that what funds he had were placed to the credit of himself as administrator of one L. D. Aistrop. It is further shown by the testimony of a witness, with whom Aistrop was employed in Lynchburg, that he did not have very much money; and as to his body servant, this witness only says " it seems to me that he bought a negro man here— a body servant." Whether the witness is speaking of a period prior to the beginning of the war is not clear. It nowhere appears that appellants ever knew of Aistrop owning property in the city of Lynchburg or Washington, and in point of fact, although there were some rumors that he had made money in Washington, he owned no property there in his own name, prior to 1892, if afterwards, except a lot in Glenwood Cemetery. When he purchased the farm in Nelson county in 1892, he had it conveyed to one R. L. Galt, and did not take the title to it in himself until he thought the judgments against it were " outlawed." Galt was examined as a witness on behalf of appellants, and testifies that Aistrop was in the employ of his (Galt's) firm in Washington for eighteen or twenty years as a book-keeper, and that during his stay in Washington, he thinks the only property he ever owned in his own name was the lot in Glenwood Cemetery, and tells of money he had loaned out in the name of some one else. When the deed to the Nelson farm was made to Galt, Aistrop told Galt there were judgments against him (Aistrop), and Galt understood him to mean judgments in Virginia, and says that he did not know that there were judgments against him in Washington. In a letter to his lawyer, residing in Nelson county, written about the time of his purchase of the farm, it is manifest that he was having it conveyed to Galt because of the judgments against him, not only in Washington, but in Nelson county. The record abundantly

shows Aistrop to have been hopelessly insolvent up to the time that he departed from Virginia, and that he thereafter systematically and adroitly covered up his earnings, or what property he acquired, so as to keep it out of the reach of his creditors till the fall of 1892, when he felt assured that the judgments against him were barred by the statute of limitations; and it seems to be conceded that he was overwhelmed with judgments, both in Washington and Virginia. The conclusion is, therefore, irresistible that the judgment of appellants was not paid in 1892, or prior thereto; and there is not a single circumstance even tending to show that it was paid after that time, or to raise a presumption that it was paid, unless it be the delay of Cheatham till after Aistrop's death to bring this suit, and the promptness with which he then brought it.

When the farm in Nelson county was purchased by Aistrop in 1892, Cheatham had not only moved to Lynchburg, but had ceased to visit that county on court days, as he formerly did. Aistrop did not return to Virginia until 1896, and died within a year, having been an invalid and confined to his room nearly the whole time. The unimpeached testimony of Cheatham is that he was always told that Aistrop did not own any property; that he was not aware that anything could be made out of him; that it was only a short time before Aistrop's death that he heard he had purchased property in Nelson county; that he thought his judgment was out of date, but when he heard of Aistrop's death he thought about it, and telephoned Mr. Caskie to come to see him with reference to it. He further says positively that the judgment has never been paid.

True, the judgment had been standing for forty-two years or more when this suit to enforce it was brought, but in the meantime the debtor deserted his State, within a few years after the judgment was recovered, and resided in another jurisdiction for thirty-three years. Whatever may have been the rumors as to his success in making money during his absence, the fact remains

that he had no property within the reach of his creditors prior
to 1892, and in the face of the proof that although he was suc-
cessful, according to appellee's contention, in amassing wealth,
it seems never to have occurred to him to pay his debts, but, on
the contrary, he taxed his ingenuity to devise schemes by which
to own property and lend out money at interest, so that he could
keep it from his creditors.  This course had been pursued by
him until even he became averse to it, as shown by a letter to
his lawyer May 29, 1892, expressing a desire to make a clean
transaction with reference to the matter about which he was
writing (the Nelson farm), and what follows in the letter
amounts to a confession that he had theretofore been making
false statements, under oath, in order to prevent his property
from being taken for his debts.

In view of this record, as to his manner of dealing with his
creditors prior to that time, and the further fact that he believed
the judgments against him in Nelson county were "outlawed,"
when he caused Galt to convey the farm to him in 1892,
Cheatham's testimony that the judgment asserted in this suit
has never been paid, and the absence of evidence to the con-
trary, we are of opinion that the decree of the Circuit Court of
Nelson county, dismissing the bill as to the appellants, is erro-
neous. It will, therefore, be reversed and annulled, and the cause
remanded to be further proceeded with in accordance with the
views herein expressed.

*Reversed.*.