# Richmond.

## McClanahan's Administrator and Others v. Norfolk and Western Railway Company and Others.

### January 13, 1916.

#### Absent, Cardwell, J.

1. Equity—*Creditors' Bill—What Constitutes—Parties—Amendments.*—
   A bill filed by one or more judgment creditors, suing on behalf of
   themselves and all other lien creditors of the debtor, against the
   administrator and heirs of the judgment debtor, is a judgment
   creditors' bill, although all the lien creditors are not made parties
   and all of the real estate liable to the liens is not mentioned in the
   bill. It is the common practice in such cases to search out other
   real estate upon which the ·judgments are liens, and to bring it
   before the court for administration. If third persons do not claim
   any interest in such additional real estate, no amendment of the
   pleadings is necessary; if they do, they should be brought in by
   amended bill or petition, and other lien creditors may come in by
   proving their liens before the commissioner to whom the cause is
   referred to take an account of liens.

2. Equity—*Lien Creditors' Bill—Bill by Single Creditor—Order for Ac-
   count.*—A suit by a single judgment creditor to subject land to the
   payment of the judgment becomes a lien creditors' bill upon the
   entry of a decree referring the cause to a commissioner to take an
   account of liens on the real estate of the defendant, and of the real
   estate liable for their payment, and the entry of such decree oper-
   ates a suspension of all other pending suits of creditors for the
   same purpose, and they must come in under the decree, which is
   considered a decree in favor of all such creditors.

3. Equity—*Lien Creditors' Bill—Amendment—Departure—New Case.*—
   An amendment of a lien creditors' bill which sets out in detail
   other lands bound by the complainant's judgments, and brings be-
   fore the court all those who claim to be interested in those lands
   adversely to the lien creditors, is not a departure from the original
   bill and does not make a new case, although it contains some aver-
   ments not contained in the original bill.

4. Equity—*Lien Creditors' Bill—Deceased Debtor—Account of Personal
   Assets—Failure to Ask—When Immaterial.*—In a lien creditors' suit

against the administrator and heirs of the deceased judgment debtor, in which it is sought to subject lands aliened by him after the judgments were docketed, the failure of the bill to ask that said administrator be required to state an account of his administration of the assets of his decedent becomes immaterial where, although there was the strongest incentive to ascertain such assets, there was not the least suggestion from the complainants or defendants, or from any other source, that any such assets existed, and it is manifest that the taking of such an account would simply lead to delay and the accumulation of costs.

5. JUDGMENTS—*Limitation of Actions—Removal from State.*—The removal of a judgment debtor from the State is of itself an obstruction to a suit to enforce the judgment, and the statute of limitations does not run against the judgment while the debtor remains out of the State.

6. JUDGMENTS—*Limitation of Actions—Removal of Debtor from State—Enforcement against Alienees—Code, Section 2933—To What Applicable.*—A judgment which is a lien on lands in the hands of an alienee of the judgment debtor, and which is not barred as against the debtor because of his removal from the State, may be enforced against the lands in the hands of such alienee, although he has in no way obstructed the prosecution of the plaintiff's rights. The provision of section 2933 of the Code that "this section shall not avail against any other person than him so obstructing notwithstanding another might have been jointly sued with him if there had been no such obstruction" was intended to apply to a case where two or more were jointly liable, and some one or more of them obstructed the plaintiff in the prosecution of his suit in some of the methods mentioned in the statute while others did not.

7. JUDGMENTS—*Res Judicata—Precedent.*—A decision in a given case is none the less authoritative, because the conclusion might have been reached upon more than one ground.

8. JUDGMENTS—*Enforcement—Laches.*—The doctrine of laches has no application to a suit to subject land to the lien of a judgment. A judgment is an express, absolute, statutory lien on the debtor's real estate, and the right to resort to a court of equity to enforce it is a legal right, without terms and conditions, and continues during the life of the judgment.

9. APPEAL AND ERROR—*Commissioner's Report—Refusal to Pass on.*—In the present state of the record, this court declines to pass on the report of the commissioner in chancery, deeming it safer to remand the cause to the trial court where the details of the report can be more safely worked out, as the decrees of this court are final, and an error committed here cannot, in general, be corrected at a subsequent term.

Appeal from a decree of the Circuit Court of Montgomery county. Decree for the defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*R. E. Scott, H. T. Hall* and *Randolph Harrison,* for the appellants.

*L. H. Cocke, Coxe & Cocke, Roy B. Smith, C. B. Moomaw, Everett Perkins, S. H. Graves, M. M. Caldwell, C. S. McNulty, T. W. Miller, Roop & Phlegar* and *McCormick & Smith,* for the appellees.

Keith, P., delivered the opinion of the court.

Ferdinand Rorer, formerly a citizen of Virginia, residing at the city of Roanoke, was a large land owner in Montgomery and Botetourt counties and the city of Roanoke. In the years 1884, 1885 and 1886 a number of judgments were recovered against him, all of which were duly docketed. In the year 1886, shortly after the recovery of the judgments above referred to, Rorer left the State of Virginia and became a resident of the State of West Virginia, where he continued to reside until his death, on the 23d day of March, 1906. W. D. Martin, the sheriff of Montgomery county, was duly appointed administrator of Rorer on the 8th of May, 1906. Shortly thereafter W. H. Pierce, M. H. Tompkins and Lewis and Ferdinand Harvey, judgment creditors of Rorer, suing as the bill stated, "for themselves and all other lien creditors of Ferdinand Rorer, deceased, who will contribute to the expenses of this suit," filed their bill in chancery in the Circuit Court of Montgomery county against W. D. Martin, administrator of F. Rorer, deceased, Eulalie Powell, P. H. Rorer and others, heirs at law of Rorer; L. H. Cocke and others, trustees under

a deed of trust dated November 28, 1884, executed by Rorer for the benefit of his creditors; the Consolidated Mining Company and the Virginia Iron, Coal and Coke Company, claimants of certain portions of the lands in Montgomery county formerly belonging to Rorer and upon which the judgments against him were liens. The bill sets out numerous judgments obtained against Rorer, describes certain real estate owned by him in the county of Montgomery, stating specifically his interest therein, and averring that the deed to Cocke had been recorded in Roanoke city but not in the county of Montgomery. The bill contains many specific charges which we do not deem it necessary to detail. The prayer of the bill, after making Rorer's administrator, his heirs and the other parties above-named defendants, was that the lien of the said judgments may be enforced, and that all other, further and general relief may be granted as the nature of the case requires.

This cause was duly matured, and the bill taken for confessed as to all of the defendants except the Virginia Iron, Coal and Coke Company, which appeared at the October term, 1906, and filed its demurrer and answer to the bill. In this demurrer the complainants joined, and by a decree subsequently entered it was adjudged that the demurrer be overruled.

At the February term, 1907, Zirkle, the administrator of McClanahan, who held judgments against Ferdinand Rorer, deceased, filed his petition in the cause, in which he stated, among other things, that he had been informed that this suit "was brought for the purpose of subjecting the real estate of F. Rorer, deceased, to the payment of judgments which constituted liens on said real estate," and the prayer of the petition was, "that he may be allowed to file this, his petition in the above-mentioned cause, which he understands is a creditor's suit; that all necessary accounts may be taken; that the priority of the liens against the estate of F. Rorer, deceased, may be fixed, and that your petitioner may be granted such other, further, and general relief in the premises as the nature of the case may

require and to equity may seem meet." At the same term a decree was entered referring the cause to one of the commissioners of the court, who was directed to take an account of the real estate owned by Rorer at any time after the rendition of the judgments mentioned in the bill, the liens thereon, the conveyances and transfers thereof, and any other matter deemed pertinent or required to be stated.

From time to time other creditors of Rorer, holding unsatisfied judgments, came into the cause, and by leave of court filed their petitions for the enforcement of their judgments. In these petitions it was stated that there were other lands than those mentioned in the bill liable to the lien of the judgments, namely, certain properties in the city of Roanoke and the counties of Montgomery and Botetourt, and it was asked that the claimants of these lands be made parties defendant in the cause. We shall not set out the several petitions *in extenso,* but will content ourselves with stating in general terms their legal effect.

On the 6th day of May, 1911, leave was granted Zirkle, administrator as aforesaid, to file his amended petition, which was accordingly done, and process was directed to be issued against the defendants therein named. Among the defendants were: W. D. Martin, administrator of F. Rorer, deceased, the city of Roanoke, M. L. and T. C. Vest, Roanoke city school board, W. A. Burke, B. S. Headley and Mary R. Yates. Process on this amended petition was duly issued on May 6, 1911, within five years from the appointment of Rorer's administrator, and was served on W. D. Martin, administrator of Rorer, on May 8, 1911, and on the other defendants named therein in May of that year.

This amended petition, after setting out the proceedings theretofore had in the cause, alleged, among other things, that at the time of the docketing, in the city of Roanoke, of the judgments held by the petitioner, there were a number of lots of land theretofore owned by Rorer which he had sold to other

parties, the deeds to which had not been recorded, and that the lands were liable to the lien of his judgments. Then follows a particular description of the several lots which the petitioner sought to subject to the lien of his judgments. The prayer of the amended petition was that "an account of all the property owned by the said F. Rorer which is liable to the lien of said judgments be directed and taken; and may the real estate in Roanoke city herein described be decreed to be subject to the liens of the judgments set out in said original petition; and may the same and all other property of the said F. Rorer ascertained to be liable for the judgments against him be sold and the proceeds applied to the satisfaction of said judgments; . . . may all such other, further and general relief be granted your petitioner as the nature of his case requires and to equity may seem meet."

W. J. Blair and P. H. Rorer were also permitted to file petitions, by decree of May 6, 1911, but it is not deemed necessary to refer to them more specifically, as they are in substance similar to the petitions filed by McClanahan's administrator.

At the October term, 1911, the Roanoke city school board and F. Fallon appeared and by leave of court filed pleas of the statute of limitations to the amended petition of McClanahan's administrator and to the petitions of Blair and P. H. Rorer. The two pleas, which are identical, are as follows:

"This defendant, not confessing or acknowledging all or any part of the matters and things in said petition contained to be true in manner and form as the same are therein set forth, for plea nevertheless to the said bill (petition) doth plead and aver that, if the complainant ever had any cause of action or suit against this defendant for or concerning any of the matters in said petition mentioned (which this defendant doth in no sort admit) such cause of action or suit did accrue or arise above ten years before the filing of said petition, and more than ten years before issuing execution or serving or suing out process against this defendant to appear to and answer the said petition."

Burke and wife also appeared and filed their answer, and by an order entered on October 2, 1911, leave was given McClanahan's administrator, P. H. Rorer and W. J. Blair to file their amended petitions to meet the pleas of the statute of limitations, and upon these petitions process was directed to be issued against the defendants named therein. This amended petition of Zirkle, administrator as aforesaid, states, among other things, that at the time of the recovery of the several judgments against Rorer he was a resident of the city of Roanoke, and shortly thereafter, in 1886, departed without the State of Virginia, and continued to reside in the State of West Virginia, with no place of abode in the State of Virginia, and thereafter continuously obstructed the holders of the judgments in the prosecution of their remedies against him until his death and the qualification of his personal representatives in 1906; so that, excluding the time between his departure from the State and the qualification of his personal representative, the time which elapsed from the recovery of the judgments to the institution of this suit, the entry of the order of reference herein, and the filing of the original and amended petition, there was less than ten years, the period set up in the pleas aforesaid. The petition, by way of further amendment, alleges that at the time of the recovery of the judgments held by the petitioner, Ferdinand Rorer was the owner of other lands than those hereinbefore referred to, and then proceeds to describe the lands and the parties who were in the possession of them, and he then prays that the prayers of original and the first amended petition be granted, that the judgments be decreed to be liens upon the additional lands hereinbefore mentioned, and that the same be sold and the proceeds applied to the satisfaction of the judgments; that all necessary accounts and inquiries be directed and taken; that the several pleas of the statute of limitations filed by the city of Roanoke, the school board of Roanoke city and Frank Fallon be overruled and rejected; and that all such other, further and general relief be granted petitioner as the

nature of his case may require or to equity may seem meet. W. J. Blair and P. H. Rorer filed amended petitions to the same effect.

Moomaw, one of the defendants named in the second amended petition, appeared and filed his demurrer and answer, denying that the judgments set up in the petition were liens on the lands claimed by him, because process against him to answer said petitions was issued on October 24, 1911, more than five years after the qualification of Rorer's administrator; because he became the purchaser of said land in 1882 and 1883 and put his deed to record in 1886, during all of which time he had been a resident of the city of Roanoke, in open and notorious possession of said land; that no executions were issued on said judgments, nor were they revived within ten years from their dates, and therefore the right to enforce them against the land claimed by him was barred; that Ferdinand Rorer was the owner of a vast estate at the time of his death, which was a primary fund for the payment of his debts, and there were other lands in the city of Roanoke aliened after the date of the deed to him, which should be first subjected; that the dealings of Rorer were so extensive that it would require reference to a commissioner to ascertain the facts; and that the land so primarily liable was sufficient to discharge the judgments binding on his real estate. Moomaw then prayed that his answer may be treated as a cross bill; that P. H. Rorer may be required to answer the same, but not on oath; that the cause be referred to one of the commissioners of the court with instructions to take an account of the estate of which F. Rorer died seized and possessed, as well as an account of what moneys P. H. Rorer received from said estate, and also an account of what lands F. Rorer sold and conveyed after the date of the purchase of the land by D. C. Moomaw from F. Rorer, and on which, for any reason, the aforesaid judgments may be liens. The other defendants to this petition filed like answers.

On December 9, 1911, the city of Roanoke and Frank Fallon

by leave of court, withdrew their pleas of the statute of limitations, reserving the right to make that defense in their answers to the petitions. At the same time the Roanoke city school board filed its answers to all the petitions above mentioned. These answers are of the same purport, and, among other things aver, that the judgments are barred by the statute of limitations, for the reason that no execution was ever issued on the judgments within a year, nor any *scire facias* or action brought within ten years after their respective dates; that the trustees of the Big Lick school district, its predecessor in title, was a complete purchaser of the property from F. Rorer, deceased, under a parol agreement fully performed, long prior to the recovery of any of said judgments.

McClanahan's administrator, Blair and P. H. Rorer excepted to these answers so far as they set up the defense of the statute of limitations, upon the following grounds: "That the several defenses attempted to be set up thereby are insufficient in law because the record and the proceedings herein show:

"(1) That the judgments in said petition mentioned were duly recovered against F. Rorer in a court of competent jurisdiction in the years 1885 and 1886 and were duly docketed:

"(2) That the said Rorer, at the time said judgments were recovered, was a citizen of the State of Virginia, and thereafter, within ten years from the date of said judgments, to-wit, on the ——day of ————, 1886, departed without said State and became a citizen of another State, to-wit, the State of West Virginia, continuously residing there until his death, to-wit, on the 23d day of March, 1906, thereby obstructing the holders of said judgments and the parties entitled to sue thereon in the prosecution of their rights, respectively.

"(3) That on the 8th day of May, 1906, W. D. Martin was duly appointed administrator of the said F. Rorer, deceased, and within five years thereafter, to-wit, in the year 1906, this suit was brought, and on the 12th day of February, 1907, an order of reference was therein entered, and within the said

period of five years, to-wit, on the 6th day of May, 1911, the petition of this exceptant was filed and process to answer the same was duly issued within said period; that by reason of said several facts which appear by the record and proceedings in said cause, said judgments were not barred by the statute of limitations and this exceptant is in no manner barred or estopped from asserting the same, or from subjecting the property of respondent to the payment thereof by reason of the matters and things, or any of them, contained in so much of said answer as is above set out."

The issue thus presented between the petitioners, McClanahan's administrator, Blair and P. H. Rorer, judgment creditors of F. Rorer, deceased, and the respondents, vendees of Ferdinand Rorer, claiming lands bound by those judgments, was whether those vendees could, in their own right, plead the statute of limitations applicable alone to Ferdinand Rorer, it being conceded that the judgments were not barred as to Rorer, or his administrator, or his heirs.

On May 9, 1912, the cause came on to be heard solely upon the question as to the right of the vendees of Rorer to interpose the bar of the statute to these judgments, when they were not barred as to Rorer, the judgment debtor, and the court decided that "The statute of limitations to the judgments set out in the said petitions was not suspended as against the vendees and grantees of land from F. Rorer . . . although the statute of limitations may have been suspended as to F. Rorer, the judgment debtor;" and accordingly the court held that all of the judgments were barred as to each of said vendees and those claiming under them, except as to one of said judgments, namely, the judgment of E. G. McClanahan, recovered in June, 1886, upon which it appeared that an execution issued in June, 1896, and was returned "no effects;" and dismissed each of said petitions with costs against the petitioners, so far as they sought to set up the judgment above mentioned, except the judgment of McClanahan's administrator.

Subsequently, by leave of court, the petitioners, McClanahan's administrator, W. J. Blair and P. H. Rorer, within the time prescribed by law, filed their bill to rehear and review this decree, but the court adhering to its opinion, on motion of the defendants thereto, dismissed the said bill of review by decree entered at the October term, 1914.

At the May term, 1912, upon a supplemental bill then filed, it appearing that the petitioner, Blair, had become the owner of all the judgments set up in the original bill, it was directed that the cause should thereafter proceed in his name as plaintiff, and at his cost, and that he be substituted to all the rights and remedies of his assignors and entitled to all of the benefits of the original suit, and all of the proceedings had therein, and that he is entitled to all the relief prayed for in the original bill of complaint, and all of the relief pertaining to the enforcement of the judgments aforesaid. Thereupon, Blair, by leave of court first obtained, filed an amended bill of complaint. This bill sets out the proceedings theretofore had in the cause, namely, the filing by his assignors, Tompkins, Pierce and the Harveys, of their original general creditors' bill against Ferdinand Rorer's administrator, heirs, and others, in 1906, the object of which was to enforce the judgment held by the plaintiff against the land of Rorer subject thereto; the entry of an order of reference in said cause directing an account, among other things, of the real estate owned by Rorer at any time after the rendition of the judgments, the liens thereon, and the conveyances and transfers thereof; the filing of the petitions of McClanahan's administrator, W. J. Blair and P. H. Rorer, in May, 1911, within five years from the appointment of Rorer's administrator; the prayers of said petition, the assignment of the judgments set up in the original bill; the lands which were liable to the lien of said judgments, namely; certain lands in the counties of Montgomery and Botetourt, and Roanoke city, belonging to Rorer, and which he had never aliened; the several lots and parcels of land in the city of Roanoke,

mentioned in the petitions aforesaid, and now claimed by the school board of the city of Roanoke and the other parties named in said petitions. This amended bill further alleged that executions had duly issued on said judgments and had been duly returned in the years 1885, 1886, 1904 and 1905, and that Rorer, shortly after the recovery of said judgments, had departed from the State of Virginia and thereafter continued to reside in the State of West Virginia until his death, as set out in said petitions.

The prayer of this bill was that the parties above referred to, claiming said lands, be made parties defendant thereto and to the original bill, and required to answer the same; that the judgments held by the complainants might be declared liens on the said lands and enforced against the same; that the execution of the decree for an account entered in February, 1907, be proceeded with, and all other necessary and proper accounts be taken, and for general relief.

All of the defendants to this amended bill—the Roanoke city school board, Moomaw, and others—appeared and filed their demurrers and answers thereto. These answers, among other things, averred that there were other lands in the city of Roanoke owned by Rorer at the time of his death which were liable to the lien of said judgments, and which should first be sold, and particular mention was made of a tract of one acre of land in the city of Roanoke, conveyed to F. Rorer and P. H. Rorer by John Trout, by deed dated May 5, 1874, and now in the possession of the Norfolk and Western Railway Company but which was never in fact conveyed to said company.

Upon the coming in of these answers, the following order was entered on July 12, 1912: "Upon consideration whereof, it being suggested in said answers that full justice cannot be done, or the whole controversy in this cause ended, without the presence of the Norfolk and Western Railway Company, it is ordered that the bill of complaint be amended making said Norfolk and Western Railway Company a party defendant thereto. And it is further ordered that, upon said amendment

being made, process issue against said Norfolk and Western Railway Company requiring it to answer said bill. Pursuant to this order, at the first December rules, 1912, W. J. Blair filed his second amended bill, setting out the proceedings theretofore had, a list of the judgments held by the complainant, and a history of the title to the land. From this history it appears that by deed dated May 5, 1875, and duly recorded, John Trout, then the owner in fee thereof, conveyed the same to F. Rorer and P. H. Rorer, as F. Rorer & Son, with general warranty; that neither Rorer nor his son ever conveyed said land, but were still the owners thereof at the time of Ferdinand Rorer's death; and that the Norfolk and Western Railway Company was in possession claiming under a deed from Marshall Waid and P. L. Terry, who never had any title thereto. The averment of the bill was that one undivided half interest in this land was liable to the liens of said judgments against Rorer, all of which had been duly docketed, and that the same should be sold to satisfy the said judgments.

At the February term, 1913, the Norfolk and Western Railway Company filed its demurrer and answer to this amended bill, the ground of demurrer being that "it should not be required to answer said amended bill, for on its face it purports to convert the litigation in this cause into a general creditors' suit against the estate of F. Rorer, when as a matter of fact, as shown upon the face thereof, the original bill in this cause was not a general creditors' suit, and cannot be so made for the purposes set forth in said amended bill, or for any other purposes, and this respondent says that said amended bill should be dismissed and the same stricken from the record in this cause."

The answer of the Norfolk and Western Railway Company avers that the respondent was in possession of said land under a deed from Marshall Waid and P. L. Terry, and denies that the judgment debtor, Rorer, ever had any title thereto. The answer further relies upon the defense of the statute of limitations and adverse possession.

On the 15th of May, 1913, Commissioner Ellett, pursuant to the direction of the court, proceeded with the execution of the order of reference entered at the February term, 1907, after due notice to all parties. McClanahan's administrator and others appeared before the commissioner, proved the judgments held by them, and introduced evidence in support of the allegations of the original and amended bills and the petitions filed herein, especially the contention of the judgment creditors that the lands claimed by the Norfolk and Western Railway Company, the school board of the city of Roanoke, D. C. Moomaw and others, were liable to the liens of their judgments. The Norfolk and Western Railway Company, the school board of Roanoke city, and others, defendants to the amended bill, also appeared before the commissioner, and though objecting to his proceeding until their demurrer should be passed upon, cross-examined the witnesses introduced on behalf of the judgment creditors, and themselves introduced evidence in support of their several contentions, as set out in their answers, and in writing asked the commissioner to report certain facts deemed by them to be pertinent.

The commissioner returned his report to the July term, 1914. In this report the contentions of the judgment creditors were sustained and the commissioner reported that the petitioners, McClanahan's administrator and others, were the owners of the several judgments asserted by them; that these judgments were valid, subsisting charges against F. Rorer and his estate for the amounts claimed to be due thereon, and that they were not barred by the statute of limitations; that each of the judgments had been duly docketed and indexed as required by law, and were valid and subsisting liens upon the lands claimed by the Norfolk and Western Railway Company, the school board of the city of Roanoke, D. C. Moomaw, and the others heretofore mentioned, as set out in the pleadings filed herein. Then follows a description of the several tracts of land owned by Rorer and unaliened by him at the time of his death, and

26

which were first liable to the satisfaction of said judgments. We do not deem it necessary at the present time to go more fully into the commissioner's report.

On the first day of the July term, 1914, the Norfolk and Western Railway Company and other defendants who had filed demurrers, appeared and insisted upon a decree upon their demurrers to the amended bill. The judgment creditors produced a letter from the commissioner advising the court that his report would be filed within a day·or two, and asked that a consideration of the case be deferred until the commissioner's report would come in, when the whole case, with all of the facts, would be before the court; but this motion the court overruled, and entered a decree sustaining the demurrer to the amended bills and petitions aforesaid, and dismissed the same as to the Norfolk and Western Railway Company, Roanoke city school board, Fallon, Vest, the Moomaws, Nininger, the city of Roanoke, Burke, Headley and Yates. To this decree an appeal was awarded by one of the judges of this court.

As we have seen, the judgments against Ferdinand Rorer were obtained in 1884, 1885 and 1886, and were duly docketed as required by law before the date of the recordation of the deeds under which the appellees claim.

The contention of appellants is that the bill filed by Pierce and others, who sued for themselves and all other lien creditors of Ferdinand Rorer, deceased, was in its inception a creditors' bill. It makes the administrator and heirs at law parties; it is brought in the circuit court of the county in which one of the parties, to-wit, the administrator of Ferdinand Rorer, resided, and in which a part of the land lies which it is sought to subject to the lien of the judgments. Rorer being dead, under the decision of this court in *Ewing's Admr.* v. *Ferguson's Admr.,* 33 Gratt. (74 Va.) 548, all of his debts were by operation of law charged upon his estate, and the term "all liens" used in the decree in that case the court held "must be taken to mean all debts which may bind the real estate." That this

bill is in form a creditors' bill seems to be conceded, and indeed could not with propriety be denied. It is said by counsel for appellees in their brief, that it is possible for a bill to be drawn "in a form indicating one purpose, whereas the substance of the bill may conclusively show that an entirely different purpose was intended. The proposition that the substance of a pleading and not its form will determine its nature and intent is elementary and does not require discussion." The object of the bill was to enforce the lien of the judgments upon the real estate of which Rorer was seized at any time after the rendition of those judgments. It is true that only a portion of his real estate is specifically referred to in the bill; it is also true that only a part of the judgments against him are set out in the bill; but it is a common practice in such cases to search out other real property upon which the judgments constitute liens, and to bring it before the court for administration. Where third parties do not claim any interest in it, it is not necessary to amend the pleadings in order to do so. Where it is claimed that the interests of others have attached, the proper mode is to file an amended bill or to bring the facts to the attention of the court by petition; and as to parties, it is common practice, where a bill is filed on behalf of one creditor for the benefit of all, to permit creditors not mentioned in the bill to prove their claims before a commissioner who has been directed to take an account of the debts.

This was the course pursued in *Ewing's Admr.* v. *Ferguson's Admr., supra.* It was there contended by appellants, "that the paper purporting to be an amended bill is not an amended bill, because it is a departure from the original bill, and makes a new case, both in respect of parties, and in the relief sought; and that the court erred when it sustained the demurrer, in giving leave to amend, instead of dismissing the plaintiff's bill; and that the amended bill should have been struck from the file, on motion." But this court was of opinion that "although the original bill was not filed as a creditor's

bill, the county court did not err in the order of 12th of May, 1873, allowing Ellett & Drewry and H. & I. Guggenheimer, on their motion, to file their petitions and be made coplaintiffs with the complainants;" and that it did not err in referring the matter to a master to take an account of all liens upon the real estate of the decedent. This language is precisely applicable to the case under consideration, and states the doctrine which has for time out of mind been the law in this form.

In *Stephenson* v. *Taverners,* 9 Gratt. (50 Va.) 388, it was held that "A creditor has a right to bring a suit for his claim; but he ought to bring it for himself and all other creditors;" and that not having done so, the other creditors had a right, on petition, to come in and be made coplaintiffs with them. It was also held that, when in a suit for the administration of assets a decree is made for an account of outstanding claims against the estate, it operates a suspension of all other pending suits of creditors, who must come in under the decree, which is considered a decree in favor of all the creditors.

In *Harvey's Admr.* v. *Steptoe's Admr.,* 17 Gratt. (58 Va.) 289, it was held that where there was a decree directing a commissioner to take an account of all outstanding and unsatisfied debts, the court took upon itself the administration of the assets, and would have restrained parties afterwards from proceeding by separate suits.

In *Kent's Admr.* v. *Cloyd's Admr.,* 30 Gratt. (71 Va.) 555, the same doctrine was enunciated and it was held that "the same result follows when the heir or devisee is made a party with a view to a sale of the real estate."

In *Ewing's Admr.* v. *Ferguson's Admr., supra,* the court in the course of its opinion says: "We think it is by no means clear that the plaintiffs, including the petitioners, could not have maintained their case upon the original bill;" but held that from the time the decree for an account was rendered in that case, it was no longer a separate creditor's suit, but was a general creditors' suit; and that the petitioners, from the

date of the order of the court making them co-complainants with the plaintiffs, were as essentially plaintiffs as if their names had been inserted in the original bill as plaintiffs when it was filed.

We think that the bill filed by Pierce and others was in substance as well as form a creditors' bill; but if that proposition be open to doubt, it became a creditors' bill upon the entry of the decree referring it to a commissioner to report an account of the real estate owned by Rorer at any time after the rendition of either of the judgments mentioned in the bill, the liens thereon, the rental value, the conveyances and transfers, if any, which have been made of any of said lands, and any other matters deemed pertinent by him or required by any party.

But if that be not so, all doubt must be removed by the petitions filed by McClanahan's administrator and others, which set out in detail other lands bound by the judgments, and bring before the court all those who claim to be interested in those lands adversely to the lien creditors. In other words, again to refer to *Ewing's Admr.* v. *Ferguson's Admr.,* while the petitions and amended bill "amplify the statement of the case, and present it with greater precision and fullness, and with more directness and some averments which were not expressed in the original bill, it does not make a new case from that which was made by the original bill and the petitions."

The subject of amendments to bills in equity was fully treated by Judge Staples in *Belton* v. *Apperson,* 26 Gratt (67 Va) 207, and though the subject has since been dealt with by this court but little has been added to what was said in that case. It was there held (see first and second syllabi): "The rule in equity in regard to amendments is that they may be made when the bill is defective in its prayer for relief, or in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself. The plaintiff will not be permitted to abandon the entire case made by his bill, and make a new and different case by

way of amendment." But this rule has been much trenched upon, especially in the States and in Virginia. If a plaintiff is not permitted to make a new case, he may by his amendments so alter the frame and structure of his bill as to obtain an entirely different relief from that asked for originally.

The contention upon the part of the appellants in the case before us is far within the principle announced in *Belton* v. *Apperson*. There is no defect in the prayer for relief; there is no ground upon which to charge an abandonment of the case made in the original bill, and no effort to make a new and different case by way of amendment; nor is the frame and structure of the bill altered in substance. Other lands subject to the lien of the judgments owned by the debtors since their rendition are brought to the attention of the court, and as those lands were the subject of adverse claims, it was proper to bring those claimants before the court in order that they might have an opportunity to defend their rights. The bills and petitions have but one object, and that is the satisfaction of the judgments against Ferdinand Rorer. This purpose is not for a moment lost sight of in the pleadings, and we find no support whatever for the proposition that the amended pleadings are a departure from the original bill.

But it is objected that the original bill does not ask that the administrator of Ferdinand Rorer be required to state an account of his administration of the assets of his decedent. It is a somewhat bold statement to say that in a record so voluminous there is no evidence in support of any given assertion, but we recall no suggestion of the existence of personal assets which ever came into the hands of Rorer's administrator. There was every incentive to stimulate a search for such personal assets, which, if they could have been shown to exist, would have been in relief of the real estate sought to be charged, but neither the judgment creditors nor the owners of the aliened parcels of real estate sought to be subjected to the payment of the judgments have brought to the attention of the

court the existence of any such assets. To have required the settlement of the accounts of the administrator under such circumstances would simply have led to delay and to the accumulation of costs with no beneficial result to any of the parties to this controversy.

Upon this branch of the case we are of opinion that the original bill was in form and substance a creditors' bill, especially in view of the fact that when it was filed Rorer was dead and all his debts, however evidenced, constituted charges upon his real estate; that if this were not so, it was converted into a creditors' bill by the decree for an account; and that, leaving that bill and that account out of consideration, the petitions referred to in the statement of facts, filed within five years from the qualification of the administrator, brought all of the creditors of Rorer before the court and all of his real estate, bound by those debts by lien or otherwise, into the suit, there to be administered.

It is earnestly contended, however, that if all this be true that the liens and debts asserted are barred by the statute of limitations.

The judgments were obtained, as we have seen, in 1884, 1885 and 1886; the original suit was not brought until September, 1906, more than ten years after the rendition of the judgments. But the contention of the appellants is that section 3577, which prescribes the limitation upon suits to enforce judgments, comes within the influence of section 3578, which provides that section 2933 shall apply to the right to bring a suit to enforce the lien of a judgment.

Section 2933 is as follows: "Where any such right as is mentioned in this chapter shall accrue against a person who by departing without this State or by absconding or concealing himself, or by continuing to reside without the State, or by any other indirect way or means shall obstruct the prosecution of such right, the time that such obstruction may have continued shall not be computed as any part of the time in which the said

right might or ought to have been prosecuted. But this section shall not avail against any other person than him so obstructing notwithstanding another might have been jointly sued with him if there had been no such obstruction."

It was held in *Ficklin* v. *Carrington,* 31 Gratt. (72 Va.) 219, that "Where a debtor who resides in the State removes, after contracting the debt, to another State, the removal itself is an obstruction to the prosecution of a suit by the creditor to recover the debt, and the statute of limitations will not run against the debt while the debtor remains out of the State."

That case was followed in *Cheatham's Admr.* v. *Aistrop's Admr.,* 97 Va. 457, 34 S. E. 57, the second syllabus of which is as follows: "The removal of a judgment debtor from the State is of itself an obstruction to a suit to enforce the judgment, and the statute of limitations does not run against the judgment while the debtor remains out of the State."

That the debtor removed from this State shortly after the rendition of the judgments and remained out of the State until his death is not disputed—indeed the decree appealed from recognizes that his absence from the State was such an obstruction as prevented the running of the statute of limitations in favor of Ferdinand Rorer personally, and the appellees have made no complaint of the decree in that respect; but their contention is that as the debtors of Rorer have interposed no obstruction as to lands sought to be charged lying within this Commonwealth and within the jurisdiction of its courts, the creditors were at liberty at any time to assert their claims against the property which they seek to charge, and having failed to do so the statute of limitations continued to run in their favor, and now constitutes a complete bar to the claims of appellants.

In *Brown* v. *Butler,* 87 Va. 621, 13 S. E. 71, the identical point was made, and Judge Lewis, speaking for the court, said: "We are of opinion that so long as a judgment is in existence as against the judgment debtor, the lien thereof

continues, and may be enforced in equity, although the real estate sought to be subjected is in the hands of a purchaser who has in no way obstructed the prosecution of the plaintiff's right, provided, of course, the lien is in other respects enforceable against such real estate." It is claimed that this statement in the opinion is a mere *obiter dictum*, unnecessary to the decision. We do not so regard it. A decision in a given case is none the less authoritative because the conclusion might have been reached upon more than one ground. The appellees relied in that case, as they do here, upon the exception in the statute, and if the court had been of opinion that the appellees came within the exception to the statute it would have concluded the case in their favor. But having decided that point adversely to the appellees the court proceeded to consider another contention and found in favor of the appellees and so decided. However that may be, it is a clear statement of the law and, to say the least, a judicial *dictum,* and is entitled to great respect.

In *Ewell* v. *Daggs,* 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682, the court said: "There is no force in the suggestion that although the defense of the statute of limitations would not avail Jas. B. Ewell, because judgment had been rendered against him before the bar took effect, it nevertheless is a protection to Geo. W. Ewell, because he is a stranger to the judgment and mortgage, and the suit now pending was not brought till after the time limited for an action to recover the debt. For the present suit is not to recover the debt, nor is it a suit against Geo. W. Ewell. He is a party defendant because he has an interest by a subsequent conveyance in the lands sought to be sold under the mortgage. He has an equity of redemption, which entitled him to prevent a foreclosure and sale by payment of the mortgage debt; but the debt he has to pay is not his own, but that of Jas. B. Ewell. If he can show that that debt no longer exists because it has been barred by the statute of limitations, he is entitled to do so; but he must do it by showing that it is barred as between the parties to it.

If not, the land is still subject to the pledge, because the condition has not been performed. It is not to the purpose for the appellant to show that he owes the debt no longer, for in fact he never owed it at all; but his land is subject to its payment as long as it exists as a debt against the mortgagor, for that was its condition when his title accrued."

But we are of opinion that the terms of the statute admit of no such construction. The language relied upon by appellees is, "But this section shall not avail against any other person than him so obstructing notwithstanding another might have been jointly sued with him if there had been no such obstructions." Had the sentence stopped with the words "so obstructing," the argument in their favor would certainly have been stronger, but it does not stop there but proceeds, "notwithstanding another might have been jointly sued with him if there had been no such obstruction," which shows clearly, we think, that the legislature had in mind a suit in which there was more than one defendant, one of whom left the Commonwealth, we will say, and by so departing obstructed the plaintiff in the prosecution of his right, while the other remained in the Commonwealth and did no act to obstruct the remedy as to himself.

In *Monk* v. *Exposition Corporation*, 111 Va. 121, 68 S. E. 280, Judge Whittle, speaking for this court, said: "It is true that in some cases one creditor may set up the statute of limitations to defeat the demand of another creditor against the common debtor, but to sustain such plea it is essential to show that the cocreditor's debt is barred as between himself and his debtor." Citing *McCartney* v. *Tyrer*, 94 Va. 198, 26 S. E. 419, and *Callaway* v. *Saunders*, 99 Va. 350, 38 S. E. 182.

In *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312, 681, Judge Buchanan, speaking of the nature and extent of judgment liens and of the rights of the holder thereof in a court of equity, says: "A judgment creditor who comes into a court of equity to enforce his lien upon land is not asserting an equitable right

or seeking equitable relief. His judgment is a legal lien." And quotes with approval from *Price* v. *Thrash,* 30 Gratt. (71 Va.) 515, where it was held that the lien of a judgment is an express, absolute, statutory lien on the debtor's real estate, and the right to resort to courts to enforce it is a legal right, without terms and conditions imposed. Continuing, Judge Buchanan says: "The right of the judgment creditors to subject the strip of land held by the railroad company to the lien of their judgments recovered after the judgment debtor had parted with his interest therein results from the failure of his vendee to comply with the registry acts, which provide that every contract in writing made for the conveyance, or sale, of real estate for a term of more than five years, and any deed conveying any such estate or term shall be void as to subsequent purchasers for valuable consideration without notice, and creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be. As against the creditors of the judgment debtor, such writing is a mere nullity. As to them, it has no existence in contemplation of law, and their rights must be determined as if it had never been executed."

In passing, therefore, upon the statute of limitations, we do so uninfluenced by the fact that the lands to be charged are in the hands of alienees of Ferdinand Rorer. Those alienees failed to put their contracts and deeds with respect to the lands purchased by them upon record, and, therefore, as to the creditors of the judgment debtor such contracts are mere nullities and have no existence in contemplation of law. But if the contention of appellees be sound—if they can be permitted to show, by virtue of rights thus acquired, that they have not obstructed the creditor in the assertion of his remedy and, therefore, the statute of limitations continues to run in their favor, surely it cannot be said that the contracts under which they claim to have purchased land from Rorer are without effect, for their effect would be, if appellees' contention were

sustained to control and determine this controversy. See *Leake* v. *Ferguson,* 2 Gratt. (43 Va.), 419; *Price* v. *Thrash,* 30 Gratt. (71 Va.) 515; *Borst* v. *Nalle,* 28 Gratt. (69 Va.) 430; *Gordon* v. *Rixey,* 76 Va. 704.

In *Price* v. *Wall,* 76 Va. 336, 33 S. E. 600, it was held that "Appellant having failed to record his deed as provided by law, the land thereby conveyed is bound by the lien in question as effectually as if the judgment debtor had never parted with it."

In *Motley* v. *Carstairs,* 114 Va. 432, 76 S. E. 949, in speaking of the doctrine of laches, this court said it "is not applicable to. this case. The appellees are not enforcing an equitable but a legal right, which is not subject to the equitable doctrine of laches."

And Minor on Real Property, vol. 1, sec. 699, says: "It is to be observed that a judgment creditor who comes into a court of equity to enforce his lien upon the debtor's land is not asserting an equitable right or seeking relief which it is in the court's equitable discretion to grant or deny. His judgment is a legal lien, created expressly by statute. Hence, while it is an ordinary rule of the court of chancery that he who asks equity must do equity, this principle has no application here, because the judgment creditor's right to resort to the court of equity to enforce his lien is a legal right, without terms and conditions imposed."

The court has been referred to many other authorities by appellants and appellees bearing upon their respective contentions. They have been considered, but a discussion of them would unduly prolong this already too much protracted opinion. In view, however, of the apparent reliance of appellees upon *Dorr* v. *Rohr,* 82 Va. 359, 3 Am. St. Rep. 106, and *Miller* v. *McIntyre,* 6 Peters 61, 8 L. Ed. 320, we will observe that those cases can have no bearing upon the questions discussed in this opinion, as they are both wanting in the essential element of being creditors' suits.

Appellants have urged upon us that we should consider the commissioner's report and pass upon the questions it presents, so that the whole controversy may be disposed of by our decree. This we decline to do. We think it safer to remand the cause so that objections to the report may be passed upon in the first instance in the circuit court. Such a decree as appellants desire would involve the decision of numerous details, and we think it safer that they should first be worked out in the circuit court. All the decisions of this court are final, and an error committed by us cannot, in general, be corrected at a subsequent term. All the precautions we may take do not give us immunity from error, but they at least serve to diminish what they cannot wholly prevent.

For the reasons given, we are of opinion that the decrees appealed from should be reversed, and the cause remanded to the circuit court to be there proceeded with in conformity with the views herein expressed in order to a final decree.

*Reversed.*