## Staunton.

## COHEN V. JENKINS.

September 17, 1919.

1. LIMITATION OF ACTIONS—*Judgments and Decrees—Absence of one Judgment Debtor From State.*—A judgment was recovered, docketed and execution issued in December, 1896, against two co-partners. Execution was returned "no property found" in January, 1897. A second execution was issued in 1900, which was never returned. One of the judgment debtors removed to another State in 1901, where he died the same year.

   *Held:* That notwithstanding the removal of one of the judgment debtors, the judgment was barred as against the judgment debtor remaining in the State, who had not in any way or at any time ever obstructed the collection of the judgment within the meaning of section 2933, Code of 1904, before January, 1918.

2. MORTGAGES AND DEEDS OF TRUST—*Limitation of Actions—Removal of Debtor from State.*—Section 2935, Code of 1904, provides that no deed of trust or mortgage hereafter given to secure the payment of money, and no lien hereafter reserved to secure the payment of unpaid purchase money, shall be enforced after twenty years from the time when the right to enforce the same shall have first accrued. This creates an absolute bar to any proceeding for the enforcement of a deed of trust or mortgage after twenty years from the time the right to enforce it accrued (except those executed by a corporation, or otherwise expressly excluded by the statute). Section 2933 of the Code of 1904, which excludes the time during which a person obstructs a right by leaving the State, etc., has no application to liens created by such deeds of trust or mortgages. The absence of the debtor from the State in such cases creates no obstruction of the right to subject the property to such liens by every way and means which would be available if the debtor were in the State.

3. VENDOR AND PURCHASER—*Vendee in Possession—Interest on Purchase Money.*—A vendee put in possession without having paid all of the purchase money promised, as a general rule, in the absence of express contract relieving him from interest, is held not entitled to retain all of the rents, profits and use of

the property and at the same time to be relieved from interest upon the unpaid purchase money of which he also has the use.

4. VENDOR AND PURCHASER—*Vendee in Possession—Interest on Purchase Money Retained by Vendee Until Title is Satisfactorily Cleared.*—A vendee put into possession of the land purchased is bound to pay interest on the balance of purchase money unpaid, though, by the contract, the vendor binds himself to make said vendee a good and lawful title to the land before he calls upon him for the unpaid purchase money, or though the vendee's contract is to pay the balance of the purchase money when a good title to the property is made to him.

5. VENDOR AND PURCHASER—*Vendee in Possession—Interest on Purchase Money.*—If the vendee in possession does not desire to pay interest on the balance of the purchase money due, he may, if he wishes to do so, set the money aside by deposit in bank, or otherwise, for the purpose of paying the debt, and notify the creditor that he has done so, and thus, where he is not in default, relieve himself from the payment of interest. If he does not do so, the inference is that he is using the money for his own benefit, and it is, therefore, held that in good conscience he ought to pay interest thereon.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*J. Powell Royall* and *L. J. Holland,* for the appellant.

*Butts & Minter* and *T. C. Bowen,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

W. E. Jenkins, claiming title to a storehouse and lot in Pocahontas, Va., contracted in writing to sell it to B. M. Cohen for $4,000, of which $3,000 was to be paid in cash on the day after the council of the town of Pocahontas granted Cohen a license to sell whiskey in the building, and $1,000 to be paid "when the title to said property had been

satisfactorily cleared." The liquor license was granted to Cohen, and Jenkins and his wife, on June 15, 1914, conveyed the property to him, the deed acknowledging the payment of $3,000, part of the purchase price in cash, and as to the balance of the purchase money, using this language: "the sum of one thousand dollars, which is yet to be paid by the party of the second part to the parties of the first part (when said parties of the first part shall have satisfactorily cleared and remedied the title to the lot of land herein described from all judgments, liens, claims, imperfections and defects) * * *." It provides for immediate possession by the vendee and also contains this language: "It is understood and agreed by and between all the parties hereto that there are certain judgments and trust deeds which are at present liens upon the property described, and that there are certain defects in the title of the said W. E. Jenkins, all of which said parties of the first part covenant and agree to satisfactorily remedy and cure within the next ........ months from the date, and in the meantime said party of the second part is withholding the sum of one thousand dollars ($1,000) of the purchase money on said property until the parties of the first part shall have complied with this covenant and agreement, and upon such compliance said party of the second part is to immediately pay the said male grantor the said $1,000 balance of said purchase money, as aforesaid."

The vendee took possession of the property, conducted the liquor business there for two years, and since then has rented it to a tenant for $50 per month. He has always claimed, however, that there were defects and imperfections in the title, and therefore has refused to pay the balance of the purchase money due, and the vendor instituted this suit therefor, alleging the non-residence of the vendee and praying that an attachment in equity be levied on the property which he had conveyed.

The cause was referred to a commissioner, who reported that the title is marketable, that the property is free of liens, and that the vendee should pay the balance of the purchase money with interest from the date of the conveyance, June 15, 1914.  From this decree this appeal was allowed the vendee.

[1]  The liens which the vendee insists existed at the time of the conveyance and still exist, are two old deeds of trust and certain judgments against W. E. Jenkins rendered from 1893 to 1896.  The commissioner reports that none of these judgments are now liens, that in all cases where executions were issued they have been returned more than twenty years and are hence barred by the statute— that the last of them was barred during the year 1916.  The only one of these judgments as to which any particulars are given is that of Spragins Buck & Co. against F. E. Catlett and W. E. Jenkins, merchants and partners, trading as Catlett & Jenkins, recovered at the December term, 1896, docketed December 30, 1896, for $206.50, with interest from January 11, 1896, and $8.40 costs.  Execution was issued on this judgment December 23, 1896, and returned "no property found," January 22, 1897.  A second execution was issued May 5, 1900, which has never been returned. The commissioner reported this judgment barred, and in our opinion there can be no doubt that it was barred long before this suit was instituted in January, 1918.  In addition to this, it further appears that on May 28, 1918, Jenkins paid Spragins Buck & Co. $50 in full settlement of all claims.

It is claimed that because F. E. Catlett, who was one of the judgment debtors, removed to West Virginia in the year 1901, where he died about June or July of that year; that, therefore, the statute ceased to run against this judgment from the time of such removal, and *McClanahan* v. *N. & W. Ry. Co.*, 118 Va. 388, 87 S. E. 731, is cited.  That

case and the doctrine there announced does not support this contention, because there it was the title and interest of the judgment debtor who had removed from the State, against which the lien was asserted, while here there is no claim that Catlett has any title to or interest in this land which can be subjected to the lien of this judgment. It is the title and interest of W. E. Jenkins, acquired long after the date of the judgment, which it is here claimed can be subjected, and there is no intimation that Jenkins in any way or at any time ever obstructed the collection of this judgment within the meaning of section 2933 of the Code, as construed in the case referred to.

That section (2933) contains this proviso: "But this section shall not avail against any other person than him so obstructing, notwithstanding another might have been jointly sued with him if there had been no such obstruction." As to this proviso, this is said in the case of *McClanahan* v. *N. & W. Ry. Co.*, *supra*: "Had the sentence stopped with the words 'so obstructing,' the argument in their favor would certainly have been stronger, but it does not stop there, but proceeds, 'notwithstanding another might have been jointly sued with him if there had been no such obstruction,' which shows clearly, we think, that the legislature had in mind a suit in which there was more than one defendant, one of whom left the Commonwealth, we will say, and by so departing obstructed the plaintiff in the prosecution of his right, while the other remained in the Commonwealth and did no act to obstruct the remedy as to himself." If we correctly interpret this language, the opinion in that case accords with the view which we have just expressed.

As to the two deeds of trust, it appears that the right to enforce one of them accrued on the 10th day of May, 1894, and hence was barred on the 10th day of May, 1914, and the right to enforce the other accrued on the 14th day of

May, 1895, and hence was barred on the 14th day of May, 1915. Code. section 2935. It is claimed as to these deeds of trust that one Isaac Katzen, who executed one of them, moved out of the State several years ago and then returned, and that Catlett, who joined in executing one of them, moved to West Virginia, as above stated, and *McClanahan* v. *N. & W. Ry. Co., supra,* is relied upon.

[2]    In our opinion, this contention is unsound. The statute, Code section 2935, provides that no deed of trust or mortgage hereafter given to secure the payment of money, and no lien hereafter reserved to secure the payment of unpaid purchase money, shall be enforced after twenty years from the time when the right to enforce the same shall have first accrued. This creates an absolute bar to any proceeding for the enforcement of a deed of trust or mortgage after twenty years from the time the right to enforce it accrued (except those executed by a corporation or otherwise expressly excluded by the statute), and the language creating that absolute bar is so clear as to need no elucidation. Section 2933 of the Code, which excludes the time during which a person obstructs a right by leaving the State, etc., has no application to liens created by such deeds of trust or mortgages. The absence of the debtor from the State in such cases creates no obstruction of the right to subject the property to such liens by every way and means which would be available if the debtor were in the State. There is also uncontradicted testimony showing that both of these debts have been paid.

The other question is as to whether the $1,000 deferred purchase money should bear interest. There is some confusion in the authorities, but we do not regard the question as an open one in Virginia.

This is said in *Selden* v. *James.* 6 Rand. (27 Va.) 470, 521: "The appellant was always ready and willing to pay the money, if he could have gotten indemnity. Without

stopping to inquire whether he had a right to require such indemnity in an executed contract like this, it is obvious to remark that, according to the best-settled rules, the statement that he was *ready* and *willing* to pay is wholly insufficient to protect him from the payment of interest. He was then in possession of the land, receiving the issues and profits; he was also in possession of the money, the price of the land, and it must be a strong and clear case which could protect him, under these circumstances, from paying interest; a case showing that he had a right to retain the money, that he did in fact keep it useless and unproductive by him, and that he gave the other party notice that it was thus unproductive. This is settled in many cases." Referring to *Powell* v. *Martyr*, 8 Ves. 146; Sugden on Vendors, p. 319; *Brokenbrough* v. *Blythe's Ex'r*, 3 Leigh. (30 Va.) 638; *Kershaw* v. *Kershaw*, 22 Law Times Rep. (N. S.) 651.

[3-5] In *Oliver's Ex'r* v. *Hallam's Adm'r*, 1 Gratt. (42 Va.) 304 [298], this is held in a case in which no opinion was handed down: "A vendee put into possession of the land purchased is bound to pay interest on the balance of purchase money unpaid, though, by the contract, the vendor binds himself to make said vendee a good and lawful title to the land before he calls upon him for the unpaid purchase money, or though the vendee's contract is to pay the balance of the purchase money when a good title to the property is made to him. That case is precisely like this case, and, unless we are prepared to overrule it, is decisive. This rule has existed so long in Virginia as to become a rule of property which we should not now disturb. *Barnett* v. *Cloyd's Ex'rs* (this day decided), *ante* p. —, 100 S. E. 674. It is followed in West Virginia. *Steenrod* v. *Railroad Co.*, 27 W. Va. 1; *Hoard* v. *Railroad Co.*, 59 W. Va. 56, 53 S. E. 278, 8 Ann. Cas. 929. The text-writers also generally recognize it. Maupin on Marketable Titles to Real Estate, sec.

324, p. 766; Warvelle on Vendors, vol. 1 (2d ed.), sec. 180, p. 227.

The inquiry is not as to which party is at fault, and therefore to be penalized, but simply what is fair and just to both parties. A vendee put in possession without having paid all of the purchase money promised, as a general rule, in the absence of express contract relieving him from interest is held not entitled to retain all of the rents, profits and use of the property and at the same time to be relieved from interest upon the unpaid purchase money of which he also has the use. The rents and profits generally exceed the interest, and this is true in this instance. If he does not desire to pay such interest, his remedy is clearly pointed out. He may, if he wishes to do so, set the money aside by deposit in bank, or otherwise, for the purpose of paying the debt, and notify the creditor that he has done so, and thus, where he is not in default, relieve himself from the payment of interest. If he does not do so, the inference is that he is using the money for his own benefit, and it is, therefore, held that in good conscience he ought to pay interest thereon. The trial court followed the settled law in Virginia. See *Barnett* v. *Cloyd's Ex'r*, this term.

*Affirmed.*